**John BARROW, guardian ad litem for Deanne Hammaker and Daniel Hammaker, minors, and Co Le-Thi Hammaker, Appellants,**

v.

**Jack E. DURHAM and wife, Lavonne Durham, and the Nueces County Child Welfare Unit of the State Department of Public Welfare of Texas, Appellees.**

No. 1299.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 29, 1978.

Rehearing Denied Dec. 29, 1978.

Rene Whittle, Corpus Christi, for appellants.

H. R. Lockington, Asst. County Atty., Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

This appeal arose from a judgment dismissing a bill of review which judgment held that the plaintiffs lacked standing to bring the cause. Plaintiffs, appellants herein, John Barrow as guardian ad litem for Deanne and Daniel Hammaker, minors, and Co Le-Thi Hammaker, the natural mother of Deanne and Daniel, initiated the bill of review to overturn a prior judgment of adoption entered on July 9, 1976, granting parental rights in Deanne and Daniel Hammaker to appellees, Jack E. and Lavonne Durham. Appellees interposed a plea in bar asserting: that Co Le-Thi Hammaker had no standing to bring the suit because she was not a party to the adoption proceeding and had no interest in the children because on October 8, 1974, all of her parental rights in the children had been terminated in a proceeding under Tex.Laws 1973, ch. 543, §§ 15.01–15.07, at 1426–29; and that Barrow, as guardian ad litem, did not have standing to represent Deanne and Daniel because he had been appointed guardian ad litem for the two children in the prior parental rights termination suit and his interest in the children ended at the conclusion of the termination suit.

Without receiving any evidence and considering only the pleadings in this suit and the record in the prior termination suit the trial court sustained the Durham's plea in bar and dismissed the bill of review action.

The bill of review alleges that Barrow, as guardian ad litem in the termination proceeding, did not receive notice of the adoption though he was entitled to be notified because his representative capacity was never formally terminated. It also alleges that the children, who were five years old at the time of the adoption proceeding, were not properly represented by counsel at the adoption hearing and that appellants would have presented the defense that it was in the best interest of the children to be returned to their natural mother, Co Le-Thi Hammaker. Moreover, it alleges that the State Department of Public Welfare did not lay the infants' case properly before the court in that it merely consented to adoption by the appellees, when it would have been in the best interests of the children to return them to their natural mother.

Appellants bring four points of error. Points 3 and 4 contend the trial court erred in finding that Co Le-Thi Hammaker (3) was not a party to the adoption and (4) possessed no standing to file the bill of review.

Usually, in order for a party to possess standing to file a bill of review, he must be a party to the prior judgment, or one who had a then existing interest or right which was prejudiced thereby. 4 McDonald, Texas Civil Practice § 18.26 (1971).

The decree of adoption makes no reference to appellant, Co Le-Thi Hammaker as a party. Indeed, she was not even entitled to notice of the adoption proceeding. Tex. Fam.Code Ann. § 11.09(a)(7) (Supp.1978). Concerning any interest she might have had, the record is clear that all of her rights and interests in both Deanne and Daniel were terminated in the prior termination order, and thus she had no interest in the adoption. Tex.Laws 1973, ch. 543, § 15.07 at 1429; *Rogers v. Searle,* 533 S.W.2d 440 (Tex.Civ.App.—Corpus Christi 1976, no writ). Appellants' point 3 is overruled. Point 4 will be further discussed later in this opinion.

Appellants' points 1 and 2 contend the trial court erred in holding (1) that John Barrow as guardian ad litem for the children in the termination suit was not a party to the adoption suit and (2) that he had no standing to contest it by bill of review.

The record discloses that Barrow as guardian ad litem was not a party to the adoption. A guardian ad litem's interest is limited to matter connected with a suit in which he is appointed. *Wright v. Jones,* 52 S.W.2d 247, 251 (Tex.Com.App.1932, holding approved). See Annot., 115 A.L.R. 571 (1938). The question, then, is whether the suits for termination and adoption were separate and distinct suits. Appellant argues that the provision for continuing jurisdiction, in essence, makes the entire proceeding one suit from the time of termination to the time of adoption. Tex.Fam. Code Ann. § 11.05 (Supp.1978). We disagree. Only in a jurisdictional sense are all

actions part of the same suit. *Baker v. Seaver,* 567 S.W.2d 854, 856 (Tex.Civ.App.—Eastland 1978, no writ). The Family Code has made it very clear that except for motions to modify as provided in Tex.Fam. Code Ann. § 14.08 (Supp.1978), all requests for further action concerning a child are new suits. See Tex.Fam.Code Ann. § 11.07 (Supp.1978); see also Smith, Commentary on Title 2 Parent and Child, 8 Tex.Tech L.Rev. 19, 29–30 (1976). The language in Tex.Fam.Code Ann. § 11.10(a) & (c) also reflects the legislative determination that any suit in which termination of the parent-child relationship is sought, is a suit separate from other suits. The courts have also concluded that a termination judgment is a final irrevocable decree. *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.Sup.1976); *Baggett v. State,* 541 S.W.2d 226 (Tex.Civ.App.—Tyler 1976, no writ). Accordingly, we hold that Barrow's appointment as guardian ad litem in the termination suit ended when the judgment rendered in that suit became final, and that he was not entitled to be a party to the adoption proceeding merely because he had been appointed guardian ad litem in the prior termination suit. Appellants' point 1 is overruled and we will dispose of their point 2 in the following discussion.

All of which brings us to further consideration of appellants' points 2 and 4 regarding their standing to file a bill of review. In addition to the rights appellants assert in their capacities as alleged in the trial court and on appeal, the appellants make extended argument concerning the basic rights which were denied the children. In sum, they contend that it is mandatory for a child to be represented by counsel at an adoption proceeding in which the guardian ad litem's (here the Nueces County Child Welfare Unit) interests are adverse to those of the child. They cite for example Rule 173, T.R.C.P., and *Sims v. State Department of Public Welfare, etc.,* 438 F.Supp. 1179, 1194 (S.D.Tex.1977). In this regard, they point to the instant record which shows that the children were not represented by counsel at the adoption proceeding and that only a representative of the Nuec-

es County Child Welfare Unit of the State Department of Public Welfare of Texas was present to represent their interests. Appellees, on the other hand, assert that a child is not entitled to mandatory representation by counsel in any adoption proceeding and cite in support thereof *Rethaber v. Bauman,* 433 S.W.2d 721 (Tex.Civ.App.— San Antonio 1960, no writ). *Rethaber* is distinguishable, though, in that the court there limited its holding to the situation before it, which involved maternal and paternal grandparents in a dispute over the adoption of grandchildren. No mention was made of any conflict in interest between the child and the grandparents. So, if it can be shown that the State Department of Public Welfare's interests are adverse to those of the child, it would be an abuse of discretion for the trial judge to fail to appoint a different guardian ad litem. See Family Tex.Fam.Code Ann. § 11.10 (Supp.1978); *Missouri-Kansas-Texas R. Co. of Texas v. Pluto,* 156 S.W.2d 265, 267 (Tex. Com.App.1941, opinion adopted); compare *Sims v. State Dept. of Public Welfare, etc.,* supra. If this fact is shown along with a meritorious defense and exhaustion of legal remedies, a bill of review should be sustained. See *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996 (1950). Furthermore, if it can be shown that by collusion, neglect, or mistake, the State Department of Public Welfare did not lay the infants' case properly before the court, the adoption may be set aside by bill of review. See *Missouri-Kansas-Texas R. Co. of Texas v. Pluto,* supra. Thus, the appellants have alleged some facts both in the trial court and on appeal which if proven would entitle them to a sustaining of their bill of review. The question, then, is whether the appellants possessed standing to bring the bill of review.

Within the context of this appeal, appellants' arguments are those which would be asserted by someone acting in the capacity of next friend to the minor children. In the capacity of next friend, Barrow or Co Le-Thi Hammaker would have standing to present the interests of the children in a bill of review. This is so because in any action involving their custody, the children are the real parties in interest. *C____ v. C____,* 534 S.W.2d 359 (Tex.Civ.App.—Dallas 1976, no writ).

Although no point of error or pleading directly and specifically asserted either Barrow's or Co Le-Thi Hammaker's status as a next friend in bringing this action, we think that in matters concerning support and custody of children the paramount concern is the best interest of the children and the technical rules of pleading and practice are not of controlling importance. *Leithold v. Plass,* 413 S.W.2d 698, 701 (Tex.Sup.1967); *Boriack v. Boriack,* 541 S.W.2d 237, 242 (Tex.Civ.App.—Corpus Christi 1976, writ dism'd). Accordingly, we hold that the failure of Barrow and Co Le-Thi Hammaker to use the phrase "next friend" in the trial court and on appeal is not controlling. Rather, the assertion of the children's interest as if they were their next friends does control. 30 Tex.Jur.2d Infants § 64 (1962). Either Barrow or Co Le-Thi Hammaker had the right to sue as next friend of the children herein. See *Gallegos v. Clegg,* 417 S.W.2d 347 (Tex.Civ. App.—Corpus Christi 1967, writ ref'd n. r. e.). And, just because they did not use the phrase "next friend" in pleading or on appeal should not preclude the appellants' assertion of the children's interest. 43 C.J.S. Infants § 267b (1978); see also *Spears Dairy v. Davis,* 124 S.W.2d 159 (Tex.Civ.App.— Beaumont 1939, no writ). Appellants' points 2 and 4 are sustained.

The judgment of the trial court is reversed and the cause is remanded for trial.

NYE, Chief Justice, concurring.

I concur in the result but for a different reason. This case involves the lack of representation of two minor children whose interests were adverse to the child welfare agency and the adoptive parents. Approximately 8 to 10 years ago, Co Le-Thi Hammaker, a Vietnamese national, and her husband, Donald Hammaker, a United States serviceman, came to the United States from Viet Nam. Deanne and Daniel, twins, were

born to the Hammakers in the United States.

Co Le-Thi and her husband had many marital difficulties primarily because Donald was unable to secure and maintain employment and because Co Le-Thi was unable to communicate with him and others. Co Le-Thi noticed a big change in Donald's behavior after he arrived in the United States. She was completely dependent upon him for food, clothing and shelter. She did not speak English and had difficulty comprehending the language. Four and one-half years ago, Donald picked up all eight of Co Le-Thi's children in the state of Ohio and abandoned them at a Catholic children's center in Corpus Christi. Co Le-Thi had a great deal of difficulty in understanding what took place with her children then and thereafter. She was never provided an interpreter to communicate with her in her native tongue to explain American culture, society or court procedures. Donald's erratic behavior caused the local child welfare agency to take charge of the children. Co Le-Thi became dependent upon the Nueces County Child Welfare and Texas Department of Public Welfare for subsistence.

Temporary orders were issued in August of 1973 in Cause No. 119,012 by the presiding judge of the Domestic Relations Court of Nueces County. The children were placed temporarily in the custody of the Nueces County Child Welfare Unit. The Hon. Don Chrestman, attorney, was appointed guardian ad litem to represent the interests of the children. In 1974, Judge Thomas, the Domestic Relations Judge, appointed the Hon. John Barrow, another attorney, guardian ad litem and dismissed Mr. Chrestman from his duties. No other guardian or attorney has ever been appointed to represent the children's interests, and no order has been entered releasing or discharging Mr. Barrow from his duties as guardian.

In the hearing in August of 1974, the Child Welfare Unit presented testimony showing Co Le-Thi's financial inability to care for her children, her complete dependency upon her husband for everything, and his complete unfitness as a father to raise the children and his unfitness as a husband for Co Le-Thi. The Domestic Relations Judge entered an order terminating the rights of both parents and placed restrictions upon the placement of the children in order to allow Co Le-Thi an opportunity to provide a home for the children and to work with the Child Welfare Unit in this regard. The continuing type order specifically provided that the Child Welfare Unit should not place the children outside the City of Corpus Christi or for adoption for a period of six months after August 28, 1974. This proviso, according to the Domestic Relations Court, was for the purpose of continuing to work with the mother of said children in efforts to provide a home for all or some of her children. The order then provided that subsequent to the date of six months following August 28, 1974, all restrictions on the Nueces County Child Welfare Unit as managing conservator would terminate. There was no follow-up hearing to determine whether Co Le-Thi was providing the home family relationship suggested by the trial judge. No appeal was taken from this order.

The twins, Deanne and Daniel, were placed in the home of the appellees. Co Le-Thi visited the children and baked Vietnamese dishes for them. Later she was discouraged from visiting with them by the Nueces County Child Welfare Unit. The appellees wrote to her expressing their hope that she could be reunited with all of her children.

In September of 1975, in the same cause number (119,012), the Domestic Relations Court restored to Co Le-Thi her parental right to three of her older children. John Barrow as attorney ad litem participated, signed and approved the order on behalf of the children. John Barrow was not discharged from his duties.

In October of 1976, Co Le-Thi was again reassured by the Nueces County Child Welfare Unit that Deanne and Daniel's custody was still an open matter and that in time all of her children would be returned to her.

By this time, six of her children had been returned to her care, although only three had been restored to her officially by the Domestic Relations Court.

In March of 1977, the 105th District Court, a different court and judge but still in the same cause number (119,012), restored three more of Co Le-Thi's children to her. It was at this hearing in 1977, that an employee of the Child Welfare Unit informed Co Le-Thi that the appellees had adopted Deanne and Daniel in July the previous year. The adoption was handled in the same cause as all of the other proceedings and bore the same cause number (119,012), as the original and all subsequent proceedings. However, the record shows that neither Co Le-Thi nor the guardian, John Barrow, had been notified of this purported adoption. This Bill of Review resulted. The trial court held that John Barrow had no standing and was not entitled to notice of the adoption hearing.

The guardian, John Barrow, asserts here on appeal that Deanne and Daniel were not represented by a guardian, an attorney, or by a next friend, and that he as their guardian and attorney would present a meritorious defense to the proposed adoption had he been notified by the Child Welfare Unit or the trial court that such was going to take place.

There is a fundamental right emanating from our Constitution that protects the integrity of the family unit. *Sims v. State Dept. of Public Welfare, etc.,* 438 F.Supp. 1179 (1977). The integrity of this particular family unit began with the filing of Cause No. 119,012 in 1973. The Domestic Relations Court recognized the adverse interests existing as to the children when it originally appointed a guardian ad litem. The trial court reaffirmed this interest in the minor children when it discharged the original guardian and appointed John Barrow the succeeding guardian. Although I agree generally that the term "ad litem" limits the appointment to the term of the litigation of the suit for which the guardian is appointed, this particular appointment did not necessarily end at the conclusion of the trial court's first order divesting Co Le-Thi from her parental authority over the children. The Texas Courts have uniformly treated family matters involving minor children as a continuing type of litigation. Although this interlocutory type order was final to the extent that an appeal could have been had, the trial court considered it as continuing by its subsequent orders as to the other children, by its subsequent recognition of John Barrow as guardian thereafter at other hearings, and by treating all of such hearings, including the adoption, under the same continuing cause number (119,012). There is no question but that the Nueces County Child Welfare Unit treated all of this as a continuous case.

The integrity of the family unit has always found protection in the due process clause and the equal protection clause of the 14th and 9th amendments to the United States Constitution. Here the competing interest for these children was of paramount importance. The Nueces County Child Welfare Unit, as managing conservator, had an adverse interest to that of the natural mother; to that of the adoptive parents; and to that of the adoptive children. The right of these children and their mother as individuals to be heard at the adoption hearing would have been of little avail, when they could neither comprehend the proceedings nor did they have counsel to comprehend for them. A child's interest is generally distinct from the interest of the child welfare agencies, the natural parents, or the adoptive parents.

Although I agree that this case must be reversed and the cause remanded, it must be pointed out that when different courts and different judges enter different orders concerning different children, but all from the same family unit in the same continuous cause numbered case, the integrity of such orders must be subject to examination and protection by our courts especially when no attorney was present representing such children or the natural mother.

Although the Domestic Relations Court purported to divest the natural mother of her parental rights on the one hand, it

suggested to her and the Nueces County Child Welfare Unit on the other hand that Co Le-Thi could, and maybe should, have all of her parental rights restored to her. As this was taking place, the adoption of two of her children was concluded without notice. It is easy under the facts of this case to see the injustice afforded this stranger in our country.

Since all the proceedings were handled in cause numbered 119,012, it was a simple matter for the trial judge to see that a guardian had been appointed originally; and that subsequent hearings (with the guardian present) had taken place concerning these children, even after the reputed end of the litigation had taken place (where Co Le-Thi's parental rights had been taken away). In obedience to the original order suggesting to the Child Welfare Unit that it should work with the natural mother, it is obvious to me that such unit's interest in divesting its managerial conservatorship over the twin children to the adoptive parents was adverse to that of these minor children and to the natural mother as a matter of law.

The Supreme Court of the United States has recognized many times the importance of the child to its parent and the protection that is available in such cases. For instance the Supreme Court said in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972):

> "The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed.2d 1042 (1923), 'basic civil rights of man,' *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942) and 'rights far more precious . . . than property rights,' *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'

*Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska,* supra, 262 U.S. at 399, 43 S.Ct. at 626, the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma,* supra, 316 U.S., at 541, 62 S.Ct., at 1113, and the Ninth Amendment, *Griswold v. Connecticut,* 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring)."

In this case, John Barrow the guardian, should have participated or have been discharged and another attorney appointed in his place. Whether it was collusion, neglect, or mistake, the Nueces County Child Welfare Unit did not lay the children's care properly before the court, or the trial court would not have gone forward in the adoption hearing without the presence of John Barrow the guardian.