Jack E. DURHAM et al., Petitioners,

v.

John BARROW, Guardian Ad Litem et al., Respondents.

No. B–8205.

Supreme Court of Texas.

May 21, 1980.

Mike Westergren, County Atty., T. R. Bandy, Jr., Asst. County Atty., Corpus Christi, for petitioners.

Rene Whittle, Corpus Christi, for respondents.

DENTON, Justice.

The plaintiffs, the natural mother and the guardian ad litem of two minor children in a prior suit, brought a bill of review to set aside the adoption of the children, and to return the children to the natural mother. The adoptive parents filed a plea in bar on the grounds that the plaintiffs lacked standing to bring a bill of review because they were not parties to the adoption, and thus had no standing as a matter of law. The trial court sustained the plea in bar and dismissed the action without granting leave to amend.

On appeal, the plaintiffs argued that the trial court had erred in sustaining the plea in bar on the basis of three theories: (1) that both plaintiffs were parties to the adoption suit which was a part of one continuous suit affecting the parent-child relationship; (2) that the guardian ad litem in the termination proceeding had not been discharged, but had continued to represent other siblings in subsequent modification suits, and was therefore entitled to notice of the adoption proceedings; (3) that both plaintiffs had standing as next friend of the adopted children. The court of civil appeals reversed the judgment of the trial court and remanded the cause, holding that neither plaintiff had standing as a party to the adoption, but that both plaintiffs had standing as next friend. It also held that the guardian ad litem's representation of the children had been limited to the termination suit. 574 S.W.2d 857. We affirm the judgment of the court of civil appeals that reversed the judgment of the trial court and remanded the cause to the trial court for further proceedings, but we disagree with the rationale of the court of civil appeals opinion.

The factual background and procedural history of this case are quite complex. Donald Hammaker, a U.S. serviceman, married Co Le-Thi Hammaker, a Vietnamese national, and brought her and her three children by a previous marriage to this country. The Hammakers had five more children including the twins, Deanne and Daniel, who were born in the United States in 1970.

After returning to this country, Donald had great difficulty keeping a job and providing for his large family. This caused considerable marital difficulties which were intensified by Co Le-Thi's inability to communicate in English with her husband or others. She was totally dependent upon her husband to provide food, clothing and shelter for herself and the children.

A few years after their arrival in this country, when the family was living in Ohio, Donald unexpectedly took all eight children to Corpus Christi, Texas where he abandoned them at a Catholic Children's Center. Co Le-Thi followed her family to Texas, but she could not comprehend what had happened. In her subsequent contacts with both the welfare workers and the courts through her appointed attorney, no interpreter was provided to explain the proceedings to her in her native language.

After she arrived in Corpus Christi, Co Le-Thi was dependent upon the Nueces County Child Welfare Unit (hereinafter referred to as the Child Welfare Unit) for support. In August 1973, the Hammakers and the Child Welfare Unit petitioned the Domestic Relations Court of Nueces County to have all the children declared dependent and neglected, and to have the Hammakers' parental rights terminated. The court issued orders which gave the Child Welfare Unit temporary custody of the children, and a guardian ad litem was appointed to represent the interest of the children. In 1974, John Barrow was appointed to replace the previous guardian ad litem.

In August 1974, there was a hearing on the petition, and on October 8, 1974, a termination order was entered which terminated the parental rights of Donald and Co Le-Thi in all eight children and named the Child Welfare Unit as managing conserva-

tor. The termination was based on Donald Hammaker's unfitness as a parent, and his wife's total dependency upon her husband to provide for herself and their children. Although the decree entered stated that it had terminated parental rights, it also provided that the Child Welfare Unit could not place the children in foster homes outside Corpus Christi or place the children for adoption for a period of six months.[1] The purpose stated for the restriction was to permit Co Le-Thi to work with the Child Welfare Unit in order to provide a home for all or some of the children. Neither Co Le-Thi nor Barrow appealed the termination judgment.

Deanne and Daniel, were placed in the home of Jack and LaVonne Durham in mid-1974. At the end of the six month period, no hearing was held to consider the return of the children, and the restriction placed on the Child Welfare Unit ended. Co Le-Thi continued to work with the Child Welfare Unit caseworkers to regain custody of the children.

In September 1975 and March 1977, the other six children were returned to Co Le-Thi by the Child Welfare Unit. The pleadings filed by the Child Welfare Unit were captioned "Motion to Restore Parental Rights."[2] Barrow represented the children as guardian ad litem in the 1975 custody modification. After the second custody modification, in March 1977, Co Le-Thi first learned that the Durhams had adopted the twins. A judgment of adoption had been entered by the 105th District Court of Nueces County in July 1976. Neither Barrow nor Co Le-Thi had received any notice of the adoption proceedings. They then filed this bill of review.

The petition for bill of review alleged that Barrow, the guardian ad litem had not received notice of the adoption, and was prevented from presenting a meritorious defense. It was also alleged that the adoption was not in the best interest of the children, and that the Child Welfare Unit had misled Barrow to believe that the restoration of Co Le-Thi's parental rights was conditioned on her conformance to the Child Welfare Unit's requirements. It was also alleged that Co Le-Thi did not pursue her legal remedies because of her reliance on misrepresentations made to her by the caseworkers. It is asserted that the children's right to representation by guardian ad litem in the adoption proceedings was denied, and is also alleged that Co Le-Thi's parental and custody rights over the other six chil-

1. The termination decree entered on October 8, 1974 provided the following restriction on the managing conservator:

It is FURTHER ORDERED AND DECREED BY THE COURT that said managing conservator shall refrain from placing any of said children outside the City of Corpus Christi, or for adoption for a period of six months after August 28, 1974, for the purpose of continuing to work with the mother of said children in efforts to provide a home for all or some of them. Subsequent to the date six months next following August 28, 1974, all restrictions on the managing conservator shall terminate.

2. The "Motion to Restore Parental Rights" filed by the Child Welfare Unit in this cause number on August 25, 1975 requested that Co Le-Thi Hammaker's parental rights be restored to her in three of her children. The Decree entered on September 19, 1975 stated:

From the evidence adduced, the Court finds that Co Le-Thi Hammaker, mother of said children is now a fit and proper person to be entrusted with the custody of said children and has been caring for said children and exercising parental obligations and duties for a substantial period of time in a satisfactory manner, and it is now in the best interest of said children that her parental rights be fully and finally restored to her.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that the Nueces County Child Welfare Unit of the State Department of Public Welfare be and is hereby relieved and discharged of its duties and authority as managing conservator of Jeannette Hammaker, Raymond Hammaker and Donald Hammaker, Jr.

IT IS FURTHER ORDERED, AND DECREED BY THE COURT that the parental rights as mother of Jeannette Hammaker, Raymond Hammaker and Doanld Hammaker, Jr. be and is hereby vested in Co Le-Thi Hammaker.

Almost identical language is found in the "Motion to Restore Parental Rights" filed on February 18, 1977 and the Decree entered March 15, 1977 which returned three other children to Co Le-Thi Hammaker.

dren were restored to her by the Child Welfare Unit.

In addition to the allegations directly attacking the adoption judgment, the petition may also be construed as attacking the termination decree. An attack on the invalidity ·of the termination is found in the references in the petition to the alleged misrepresentations by the Child Welfare Unit in the termination proceeding, and the invalidity of the termination decree is also brought into question by the references in the petition to the two decrees by which other children were returned to Co Le-Thi and her parental rights purportedly restored. In addition, it is alleged that it is in the best interest of the children to return them to their natural mother. The prayer states the objectives sought by this bill of review. Those objectives are to have the adoption judgment set aside and a judgment entered restoring Co Le-Thi's parental rights. If only the adoption judgment were set aside, Co Le-Thi's parental rights would not thereby be restored. Therefore, the request for a restoration of parental rights compels the conclusion that the allegations of the petition are also directed at setting aside the termination judgment by this bill of review.[3]

The only issues before this Court are whether the plaintiffs have standing to bring a bill of review to set aside the adoption judgment and the termination decree. These issues must be resolved without considering the validity of the underlying termination judgment. Although the merits of the bill of review have been urged by the parties and discussed in the court of civil appeals, they are not before this Court.

As a general rule, a party to a prior judgment has standing to bring a bill of review. *Gunn v. Cavanaugh*, 391 S.W.2d 723 (Tex.1965); 4 McDonald, *Texas Civil Practice* § 18.26 (1971). Both Co Le-Thi and Barrow were parties to the termination proceeding, and both have standing in a bill of review to attack the termination decree. *See* Simpkins, *Texas Family Law, Speer's 5th ed.,* § 14:30 at 615 (1976).

Next, it must be determined whether Co Le-Thi and Barrow have standing to attack the adoption. Section 15.07 Tex.Fam.Code Ann. (Vernon 1980) provides that an individual who has been divested of parental rights by a termination decree loses all legal rights and interest in the children who were the subject of the termination proceeding. *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976); see McKnight, *Commentary on Section 15.07,* Tex.Tech.L. Rev. (1974). Section 11.09(a)(7) provides that a person whose parental rights have been terminated is not entitled to notice of a subsequent adoption. Therefore, if the termination judgment was valid, Co Le-Thi has no standing to bring a bill of review as a party to the adoption. *See Rogers v. Searle,* 533 S.W.2d 440 (Tex.Civ.App.—Corpus Christi 1976, no writ). However, if the termination decree was invalid, then Co Le-Thi was a necessary party to any adoption, and she was entitled to notice of the adoption suit. Tex.Fam.Code Ann. §§ 11.-09(a)(7) and 16.03. She would then have standing to attack the adoption by bill of review. *See* 4 McDonald, *Texas Civil Practice* § 18.26 (1971).[4]

In the court of civil appeals, it was argued that Barrow had standing to attack the adoption based on his representation of the children as guardian ad litem in the termination proceeding. The basis of this argument is that all proceedings affecting the parent-child relationship and within the jurisdiction of the court receive the same

---

3. Although the main thrust of the petition was directed against the adoption judgment, by a liberal construction of these pleadings, an attack on the termination decree has also been attempted. On remand, it will be determined in the trial court whether the necessary elements of a bill of review have been alleged. *See Baker v. Goldsmith,* 582 S.W.2d 404 (Tex. 1979).

4. Since the natural parent's standing to attack the· adoption would require a favorable judgment on the attack of the termination decree, separate trials of these two matters would be desirable with the bill of review against the termination decree tried first. Tex.R.Civ.Pro. 174.

docket number and are but one suit. The court of civil appeals held that Barrow's appointment as guardian ad litem ended when the judgment in the termination suit became final. 574 S.W.2d at 860. We agree that Barrow has no standing to attack the adoption by virtue of his being guardian ad litem in the termination proceeding. A guardian ad litem's representation is limited to matters related to the suit for which he was appointed. *Wright v. Jones*, 52 S.W.2d 247, 251 (Tex.Comm.App. 1932, holding approved). Termination suits are separate from any other suit affecting the parent-child relationship, and a termination judgment is a final, appealable judgment.[5] Therefore, Barrow does not have standing to attack the adoption as a necessary party to that suit, and he was not entitled to notice of those proceedings under Section 11.09 Tex.Fam.Code Ann. (Vernon 1980).

In holding that Barrow and Co Le-Thi had next friend standing, the court of civil appeals concluded that the allegations contained in the petition were "those which would be asserted by someone acting in the capacity of next friend to the minor children." 574 S.W.2d at 861. Although the children were the subject of the adoption suit, they were not participants in the suit, and were not necessary parties to the adoption. *Colwell v. Blume*, 456 S.W.2d 174 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.). Since the children themselves were not necessary parties to the adoption, a next friend would not have standing to attack the adoption by bill of review.[6]

We hold that the petition for bill of review has attacked both the termination decree and adoption judgment, and that both Barrow and Co Le-Thi Hammaker have standing to bring a bill of review to set aside the termination. We also hold that Barrow has no standing to bring a bill of review against the adoption, and that Co Le-Thi Hammaker has standing in the bill of review against the adoption only in the event that the termination decree is set aside.

Accordingly, we affirm the judgment of the court of civil appeals that reverses the judgment of the trial court and remands the cause to the trial court for further proceedings.

GREENHILL, C. J., dissents in an opinion in which STEAKLEY and POPE, JJ., join.

BARROW, J., not sitting.

GREENHILL, Chief Justice, dissenting.

This is a case where the natural mother's parental rights were terminated in one proceeding, and two years later two of the children were adopted in another proceeding. The termination proceeding was not appealed. Upon learning of the adoption, however, Mrs. Hammaker, the natural mother, and Barrow, the guardian ad litem for the children in the termination suit, attacked the adoption by bill of review. The adoptive parents pleaded that Barrow and Mrs. Hammaker had no standing to bring a bill of review of the adoption.

I agree with most of the holdings and reasoning in the Court's opinion. For the reasons stated in the Court's opinion, I agree that neither Barrow nor Mrs. Hammaker have standing to bring a bill of review of the adoption. I also agree that both Barrow and Mrs. Hammaker would have standing to attack the termination. I strongly disagree with the holding of the Court that *this* bill of review is an attack on the termination.

5. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). Section 11.07(b) Tex.Fam.Code Ann. (Vernon 1980) provides that requests for further court action concerning children who have been the subject of a suit affecting the parent-child relationship should be brought as a new suit by filing a petition. The legislative intent is also apparent in Section 11.10(a) which provides for the appointment of a guardian ad litem in suits in which the termination of the parent-child relationship is sought. *See also* Smith, *Commentary on Title 2, Parent and Child*, 8 Tex.Tech.L.Rev. 19, 29–30 (1976).

6. In Texas, as in other jurisdictions, a total stranger may not bring a bill of review to set aside an adoption. *See generally*, 92 ALR 2d 813–32 (1963).

The Court's opinion does not suggest that Barrow and Mrs. Hammaker have asserted all the elements necessary for a successful bill of review of the termination. Since this cause never got beyond a hearing on the Durhams' plea in bar in the trial court, the Durhams never reached a point in the litigation where they either had to attack the sufficiency of the pleadings or waive such a complaint. Had the Durhams made such an attack on the pleadings in the trial court, Barrow and Mrs. Hammaker would have had an opportunity to amend their pleadings to cure any defects. It would thus be inequitable for this Court to dispose of the cause on the basis of whether Barrow and Mrs. Hammaker properly alleged all the elements of a bill of review of the termination. Yet, it is crucial to the judgment of this Court to decide whether the bill of review did attack the termination because Barrow and Mrs. Hammaker only have standing to attack the termination.

A reading of the whole record clearly shows that Barrow and Mrs. Hammaker only attacked the adoption. In the trial court both parties submitted letter briefs in response to the Durhams' plea in bar. They clearly indicate that both sides understood the bill of review to be an attack on the adoption rather than an attack of the termination. The briefs of the parties in the court of civil appeals do not attack on the termination either.[1]

The closest Barrow and Mrs. Hammaker came to an attack on the termination in the court of civil appeals was their argument that all of the proceedings involving the children in the Nueces County courts constituted one cause so that Barrow's appointment as attorney ad litem continued as long as the Nueces court had continuing jurisdiction over the children. The basis for their argument that all proceedings constituted one cause seems to be an allegation that the same file number was used in all the proceedings. Looking at the whole record, it seems clear that Barrow and Mrs. Hammaker never conceived of the bill of review as an attack on the termination until reargument before this Court.

The Court's opinion finds support for the holding that the bill of review attacked both the termination and the adoption in a few statements in the bill of review petition. The Court's opinion states that Barrow and Mrs. Hammaker alleged that the Child Welfare Unit made misrepresentations to them before the termination. Construed most liberally for Barrow and Mrs. Hammaker, their pleadings allege that the Child Welfare Unit led them to believe that her children could be returned to her after the termination. Six of her children were returned to her. Thus the only false representation that they allege occurred after the termination when the Child Welfare Unit told Mrs. Hammaker and others that Deeanne and Daniel could be returned to her while in fact the Child Welfare Unit was arranging for the Durhams to adopt the twins.

The Court also notes the reference in the bill of review petition to the two decrees which purportedly restored Mrs. Hammaker's parental rights[2] and the prayer for a judgment restoring parental rights. These references do not support an attack on the termination. Rather, they suggest that due to her past experience Mrs. Hammaker believed that once the impediment of the adoption was removed the Child Welfare Unit could restore her parental rights as they had purported to do previously. Although a "motion to restore parental

---

1. The Durhams' brief in the court of civil appeals contained the statement: "Appellants do not attack the validity of the proceedings held prior to adoption wherein the parental rights of Co Le-Thi Hammaker to Deeanne and Daniel were terminated." Appellee's Brief at 5. I find no place in the record where Barrow or Mrs. Hammaker refute that statement.

2. Although a motion to restore parental rights may have been proper before the adoption of the Family Code, the present statutes do not seem to contemplate such a proceeding. A termination finally cuts off all parental rights. To regain all the rights of a parent it would appear that a terminated mother would have to adopt her natural children. She could, however, obtain most of the rights of a parent if she were appointed managing conservator.

rights" is at best irregular, no one has attacked the two decrees which returned six of her children to Mrs. Hammaker. If Mrs. Hammaker wanted to regain parental rights by an attack on the termination, that would have been the proper vehicle for her to accomplish the return of all eight children. Even now an attack on the termination would seem to affect the rights between Mrs. Hammaker and her other six children.

I believe that neither the pleadings nor the record as a whole suggest that the bill of review was brought as an attack on both the termination and the adoption. It is not the province of this Court to act as an advocate even for a sympathetic respondent like Mrs. Hammaker. We should not decide what cause of action Mrs. Hammaker should have brought and then misread her pleadings to find that she did bring such a cause of action.

Because the bill of review attacked only the adoption where neither Barrow nor Mrs. Hammaker were parties, they have no standing. The judgment of the court of civil appeals should be overruled and judgment should be entered affirming the trial court.

STEAKLEY and POPE, JJ., join in this dissent.