**Taffidie Nickole McGOUGH By and Through Her Next Friends, Bill E. WONZER and Linda D. Wonzer, Relator,**

v.

**The Honorable Louis MOORE, Judge of the 281st District Court of Harris County Texas, Respondent.**

No. 01–91–01160–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 6, 1992.

Earle S. Lilly/Leslie Werner deSoliz, Houston, for relator.

Dan Moreles, Atty. Gen., Texas, Gary Bledsoe, Asst. Atty. Gen., for respondent.

Before DUGGAN, DUNN and O'CONNOR, JJ.

## OPINION ON MOTION
## FOR REHEARING

DUNN, Justice.

We withdraw our opinion of January 29, 1992, and vacate our order conditionally granting the writ of mandamus to order Judge Moore to vacate his order of November 15, 1991. We deny the writ of mandamus.

After signing the final judgment in the underlying cause of action, respondent discharged John Culberson as guardian ad litem for Taffidie Nikole McGough. Thus, from November 15, 1991, when John Culberson was discharged as guardian ad litem, until February 12, 1992, when respondent appointed Kelly Coghlan as guardian ad litem, Taffidie was not represented by a guardian ad litem.[1] During this period of time, Bill and Linda Wonzer, who are Taffidie's grandparents and temporary managing conservators and represent her as next friends in the underlying lawsuit, filed this original proceeding for relief by way of mandamus.

■■■ We note that our prior opinion was issued without the benefit of exhibits that were not submitted by the Wonzers' attorneys for review by this Court and that have since been offered by Coghlan for our consideration. These documents include the statement of facts from a hearing on substitution of counsel, on September 20, 1991, when Bill Wonzer, Taffidie's step-grandfather, testified extensively about Taffidie's needs and the Wonzers' requests for money for Taffidie's care. We feel that evidence adduced at this hearing weighed heavily in respondent's decision to order investment of part of the funds awarded Taffidie in an annuity. Based on all the relevant exhibits now before this Court, we conclude that respondent acted in accordance with the broad, statutory grant of authority afforded a trial court judge under section 142.001 of the Texas Property Code and, therefore, did not abuse his discretion in entering the order of November 15, 1991, on application and hearing, for investment of funds in an annuity.

---

1. The dissent asserts that Judge Moore's appointment of Kelly Coghlan was not authorized by rule 173. ⌐In a prior opinion of this Court, *McGough v. Moore*, No. 01–92–00188-CV, 1992 WL 44871 (Tex.App.—Houston [1st Dist.], March 9, 1992, orig. proceeding) (unpublished), we overruled the Wonzers' motion for leave to file petition for writ of mandamus on this issue. The Texas Supreme Court has stated that "A guardian ad litem's representation is limited to matters related to the suit for which he was appointed." *Durham v. Barrow*, 600 S.W.2d 756, 761 (Tex.1980). All the enumerated duties that are listed in the trial court's order appointing Coghlan relate to the settlement award from the underlying lawsuit, to which Taffidie *is* a party.

The express language of Texas Rule of Civil Procedure 173 provides for appointment of a guardian ad litem in instances when a minor (1) is a party to a suit and (2) is represented by a next friend who appears to have an interest adverse to the minor. *Gibson v. Blanton*, 483 S.W.2d 372, 373–74 (Tex.Civ.App.—Houston [1st Dist.] 1972, orig. proceeding). Though the dissent would define "when a minor is a party to a suit" to mean that a trial court has authority to appoint a guardian ad litem only while a lawsuit is pending before the trial court, the language of rule 173 applies to proceedings emanating from the underlying lawsuit, including the mandamus proceeding now before this Court. Further, the final judgment, signed by attorneys for all the parties, including the attorney for the Wonzers, as "approved as to substance and form," vests the trial court with authority to enter "further orders" regarding the settlement award. Taffidie is also a named appellee in the case of *Stern v. McGough*, No. 01–92–00254-CV, an appeal from claims made for portions of settlement funds awarded in the underlying cause of action. This Court is loath to tie the hands of a trial court judge who must oversee a settlement award without the benefit of a guardian ad litem for the minor. Further, the record before this Court demonstrates that the Wonzers have interests that could appear adverse to the interests of Taffidie. Under the circumstances, Judge Moore's appointment of Coghlan was not a clear abuse of discretion, and Coghlan has standing to challenge the mandamus now before this Court.

The issue before this court in the mandamus proceeding is what a trial court judge is empowered to do under section 142.001 of the Texas Property Code. Section 142.001 provides:

> In a suit in which a minor or incapacitated person who has no legal guardian is represented by a next friend, the court, on application and hearing, may provide by decree for the investment of funds accruing to the minor or other person under the judgment in the suit.

TEX.PROP.CODE ANN. § 142.001(a) (Vernon 1984). It is undisputed that Taffidie is a minor, who has no legal guardian, and who was, for purposes of the underlying lawsuit, represented by her next friends, the Wonzers. Thus, this Court must determine the following disputed issues: (1) whether an application was made, (2) whether a hearing was held by respondent, and (3) whether the November 15, 1991, order for investment of funds accruing to Taffidie was outside the scope of the trial court's authority under section 142.001. In order to resolve these disputed issues, we must carefully examine the record before this Court for purposes of the mandamus proceeding.

### Summary of Facts

The Wonzers represented Taffidie as next friends in a lawsuit to recover for personal injuries she sustained in a swimming pool accident. Taffidie is permanently brain damaged, needs round-the-clock nursing care, and has a life expectancy of approximately 75 years. After a jury trial, but before the jury returned its verdict, the parties reached a settlement that will generate about $10.5 million for Taffidie's benefit.

1. Hearing on settlement and before jury's verdict.

The Wonzers represented Taffidie in the personal injury lawsuit, which proceeded to trial in respondent's court. On April 9, 1991, while the jury was deliberating, the parties to the underlying lawsuit advised the court that they had entered into a "high-low" agreement. The parties then recited the specifics of the agreement into the record of the court. All the defendants, plaintiffs, and their respective attorneys stated that the agreement, as read into the record, was correct. In addition, Charles Neelley, attorney for Tammie McGough, Taffidie's mother, dictated another agreement into the record, as between himself and the guardian ad litem for Taffidie. Neelley stated he and the guardian ad litem agreed that the funds tendered into the registry of the court "would be governed by section 142 [of the Texas Property Code] and the court has jurisdiction or the obligation to make a determination as to approving the agreement." The court then approved the settlement.

2. Hearing on investment of settlement funds awarded the minor.

At a hearing on September 4, 1991, the trial court announced that there was $17,000,000, plus interest, in the registry of the court and that the parties had agreed that $4,500,000 indisputably belonged to Taffidie. The trial court also announced that more money would be available for Taffidie, but the balance was subject to attorney's fees and other possible interests as between the parties, and no action could be taken regarding the balance until these matters were settled.

The court then stated that all parties interested should go on record about proper investment of four million of this award. Neelley announced that his understanding was that the agreement provided that the funds would be administered by the court and by a section 142 trustee, who would be designated by the court. The court attempted to clarify the parties' previous agreement, and questioned whether the funds could be put into a trust, but not necessarily a section 142 trust. The court stated, "The $4,000,000 will be invested in an annuity with Metropolitan Life Insurance Company for the use and benefit of Taffidie McGough, which annuity will pay $34,691.48 per month, guaranteed for fifteen years." The court further stated that the only question raised by Neelley was how the $34,691.48 was to be administered.

Neelley replied that the only thing to which he agreed was direct administration by the court or creation of a section 142 trust.

The court stated that he would hear testimony on how the $34,691.48 was to be administered and expressed concern about tax consequences of an annuity. He was advised by Roy Collins, a Vice-President and Trust Officer for River Oaks Bank, that "if Sec. 130 of the IRS Code was followed, then it is not taxable to the annuitist." Neelley stated he would agree to the investment of the funds in the annuity if he received a copy of the tax opinion from Metropolitan assuring him that the funds would be tax free. The guardian ad litem joined Neelley in imposing this condition. The parties then went off the record.

Back on the record, the court proceeded with the hearing. The first witness was Roy Collins. He stated that he was contacted some months before September and was actively involved in discussing the investment of the child's money with all of the lawyers. He agreed that a section 142 trust could be administered by his bank and that they would look after the needs of the child. He stated that administration of approximately $34,000, the monthly amount that the annuity would yield, would cost $2,500 the first year, but he did not know what administration of the trust would cost after the first year. He also stated that if there were funds left over each month after disbursement, then there would be an additional cost for administration, depending on the amount remaining in the account.

The guardian ad litem then stated to the court that if the judge did not approve the annuity, he was going to offer evidence of how the bank would handle the entire sum and how it would be invested.

Allan Richardson, a broker and investment expert recommended by Robert Friedman, the Wonzers' attorney in the personal injury lawsuit, was called as a witness by the guardian ad litem and asked about the annuity with Metropolitan Life. Richardson stated that Metropolitan was the second largest life insurance company and had a "Triple A" rating. He testified that an annuity affords financial stability and that there would be a one time fee of four percent for administration. He also testified that he was asked by Friedman to investigate and structure a settlement and that they carefully considered the low interest factor of the annuity with the stability factor, as well as cost, of the annuity. The guardian ad litem stated to the court that "while annuities are excellent at Metropolitan, I don't think it would be safer anywhere in the country; however, the rate of return is very low and that should be taken into account with regard to the investment of the funds."

Bill Wonzer testified that in his opinion an annuity was not the best thing to do with the child's money.

Marie Collins, an expert called by the guardian ad litem, stated that she was asked to look into the situation by Friedman and the judge. She testified that the annuity had a return of 3.2 percent the first year, but that the amount increased each year until the last year, when the return would reach 56.11 percent return guaranteed. Marie Collins stated that, in her opinion, the annuity conformed to Internal Revenue Service Code sections 142A and 130.

In chambers and on the record, respondent discussed his concerns, as follows:

One of the matters that this Court is very concerned about, has been ... whether or not there would be an incentive on the part of the parents and the heirs and whoever might come after these people to keep the child alive.... The Court is concerned and wants something set up that would motivate anybody who is in charge of Taffidie to keep her alive.... I'm concerned that somebody might think that it is more valuable to them ... for the child to be dead than alive ... and thus bring about a demise that has not been anticipated.... If I can remove the incentive for the destruction of this child, I want to do it.... It's just that money has a strange way of acting on human beings. And greed and so forth is a factor of life—is a fact of life.... I do feel it important that this

be taken into consideration.... This Court is interested in the welfare of the child, has only the child's welfare in mind and believes that the money should be used for the child and there should be no incentive for anybody to want an early demise of the child....

Each of the parties' attorneys then stated that they shared respondent's concerns. The guardian ad litem, Friedman, and Neelley stated to the court that Taffidie needed immediate access to funds. They requested that a section 142.005 trust be created immediately to receive money from the registry of the court for the benefit of the child, to be administered by River Oaks Bank and Trust. The court agreed and ordered the creation of the section 142.005 trust and ordered $35,000 paid from the registry of the court into the trust each month. Under the terms of the trust, the trustee was to use the money to pay the child's bills, and, if the trustee needed more than that amount, the trustee could return to the court to ask for disbursement of more funds.

The parties then asked the court for more time to reach an agreement for the investment of the funds and the following discussion took place:

THE COURT: If I don't get an agreement in a very reasonable time, I'm just going to assume that you can't make an agreement and go on.

This, in effect, will put off another 30 days or something the calculations.

. . . .

AD LITEM: After all, this annuity is not supposed to be purchased until the 16th anyway.

THE COURT: Of September.

AD LITEM: Of September.

. . . .

MR. NEELLEY: But basically we're going to postpone or we are going to leave it the way it is; and if you all come up with an agreement that I think is equitable, then I'll reconsider putting it into an annuity.

THE COURT: If you do not come up with an agreement that I feel is equitable and fair for this child, then I will go forward. I will instruct the ad litem to make an application.

. . . .

AD LITEM: Will you give us a time when they've got to agree so we will know that's the deadline they are on?

THE COURT: How much time do you think you need?

THE COURT: I think October the 1st. When I see you next time on this other, when I take up the other issues, I would expect you—I'm going to make a decision. Today is the 4th. It would just be about—in effect, it would be putting this thing off for 30 days.

The court allowed the parties until October 15 to reach an agreement, stating "if you don't come up with your agreement, we will know the 142 will still be there and either way the money would go from the registry." The court then recessed the September 4 hearing, to allow the parties time to reach an agreement about how the money should be invested.

3. Hearing on substitution of counsel.

On September 20, 1991, another evidentiary hearing was held and testimony was elicited from Bill and Linda Wonzer. Bill Wonzer testified about Taffidie's home situation and about her needs. He stated that he and Friedman had discussed rates the Wonzers were to receive from the settlement for caring for Taffidie, including $35 per hour for 24-hour nursing care, regardless of whether the Wonzers hired nurses or Linda Wonzer cared for Taffidie. Bill Wonzer also testified that he and Friedman discussed a "supervisory fee" of around $10,000, in addition to fees for nursing care. They also talked about buying a house and a car.

Wonzer testified that he and Linda were having marital difficulties prior to Taffidie's accident.

Wonzer also stated that Tammie, Taffidie's mother, left both Taffidie and her sister Tiffany in the care of the Wonzers for months at a time. The accident occurred when Taffidie and Tiffany spent the night with their mother. The jury found

the mother 15 percent negligent. Since the accident, Tammie has had two more children, with whom the Wonzers have not had contact. Wonzer testified that "Bob Friedman asked us to not paint Tammie so black in the dope and the prostitution and the naked pictures and all this stuff that we've got of her in the insurance company's deposition and that in return, he would get 75 percent of Tammie's inheritance and 85 percent of Allan's [Taffidie's father's] inheritance." Wonzer also testified that Taffidie's father was in jail at the time of the hearing on temporary custody of Taffidie.

After the hearing on September 4, 1991, Wonzer testified that he demanded or requested that Tammie assign to him 37½ percent of any inheritance that she gets. In addition, he stated that Tammie expressed a willingness to assign 75 percent of her inheritance to Linda Wonzer; however, Bill Wonzer wanted a specific assignment to himself of 37 and a half percent of any inheritance that Tammie might get as the parent of Taffidie. Linda Wonzer testified that it was her idea to have 37½ of the split in Bill's name and 37½ of the split in her name.

On the record, respondent made the following statement:

> THE COURT: Let the record show the money is available. There is four-and-a-half million dollars in the registry of the Court that has been agreed is Taffie's money that no one—none of the attorneys made a claim to. And if the parties will submit to the Court invoices of expenses since the time of trial, the Court will authorize payment of those invoices.

After the witness was excused, the court recessed the hearing until October 1, 1991.

4. The written application and amended application.

Only the guardian ad litem filed a written application with the trial court on September 30, 1991, and an amended written application on November 4, 1991. The application asked the trial court to create a trust pursuant to section 142.005 of the Texas Property Code and to appoint a banking corporation to administer the trust. The application stated in part: "If the Court determines to create an annuity, the proceeds of such annuity (being the periodic payments) will create a fund of money which should be managed by a trust."

On November 15, 1991, the respondent, on application of the guardian ad litem, entered an order providing for the investment of $4,000,000 of the minor's funds that were in the registry of the court in an annuity, in compliance with section 142.-001(a) of the Texas Property Code and title 26 of the United States Code, sections 104(a)(2) and 130. We note that this order was in accordance with the agreement of Neelley and the guardian ad litem, as dictated into the record at the September 4, 1991, hearing.

### Order Made on Application

■ We first address relator's assertion that Judge Moore abused his discretion in ordering the purchase of the annuity because no party to the lawsuit made an application. This assertion is without merit.

Section 142.001(a) does not require a *party* to make an application. Relator points to no language in section 142.001(a) that provides only a *party* may make an application. Also, the record reflects that the guardian ad litem filed an application on September 30, 1991, and an amended application on November 4, 1991. The record also reveals that prior to the September 4, 1991, hearing, the guardian ad litem and Neelley agreed and stated into the record that the court should handle the child's funds pursuant to authority granted the trial court under section 142 of the Property Code.

The September 4 hearing was initiated by agreement of the guardian ad litem and Neelley and by their request that the court handle the funds under section 142. Their statement on the record, before the witnesses were called, was that they both agreed that part of the funds belonging to the child, i.e., $4,000,000, should be invested in an annuity, conditioned on the receipt of a copy of a tax opinion from Metropoli-

tan Life, assuring them the funds invested in the annuity would be tax-free.

The record also reflects that the court gave the parties every opportunity to agree to alternative investments, by recessing the hearing until October 15 and by inviting the parties to submit applications for other investments to the court. The only application filed was by the guardian ad litem, which, in part, stated:

> If the court determines to create an annuity, the proceeds of such annuity (being the periodic payments) will create a fund of money which should be managed by a trust.

The amended application goes on to request that the trial court create a section 142.005 trust for Taffidie McGough and for the trial court to manage the funds by decree, pursuant to section 142.001.

The Wonzers do not recognize the manner in which this application was made initially, i.e., by agreement of all the parties and later, by written application while the hearing was in progress. Application of the Rules of Civil Procedure must comply with the spirit of the rules, as contemplated under rules 1 and 63.

Rule 1 of the Texas Rules of Civil Procedure provides:

> The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expensive both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction.

Rule 63 of the Texas Rules of Civil Procedure allows the trial court to approve the amendments to pleadings during the trial process.

### Order for Investment of Funds Accruing to the Minor

█ Next, relator contends that section 142.001(a) provides only three methods for investment of the funds, as specified in sections 142.002, 142.004, and 142.005. Each of these sections represents a separate management scheme: (1) the first one is "management by decree" of a court after a hearing, as provided in section 142.-001; (2) the second is "management by [a] bonded manager," as provided in section 142.002; and (3) the third is management by the "next friend or clerk," with a limited choice of investments enumerated. Relator fails to point to language in section 142.001(a) or the Texas Property Code that limits methods for investing the funds. Though sections 142.002, 142.004, and 142.-005 provide three methods for investing the funds, a trial court is not limited to these three methods. In fact, section 142.001 does not reference any of the other sections to which relator refers. Investment of funds contemplates a wide range of investment possibilities, including the purchase of an annuity. *See Patillo v. Allison*, 51 S.W.2d 1041, 1043 (Tex.Civ.App.—Waco 1932, no writ) (pre-code article 1994 authorized court, upon application and hearing, to make an order directing the investment of the funds belonging to minors. The word "invest" allows court to employ the money for some profitable use.).

Once section 142.001 has been invoked, a court has discretion to "provide by decree for the investment of funds" in a manner the court deems to be in the best interest of the child. The interests or opinions of the next friend and attorneys are irrelevant; only the child's best interest is to be considered by the court. *See Urbish v. 127th Judicial District Court*, 708 S.W.2d 429, 432 (Tex.1986).

The record reflects that Judge Moore held three full hearings, which occurred between September 4, 1991, and October 15, 1991, and entered his order of November 15, based on the agreed application of the parties as dictated into the record and based on the written applications filed with the court during the process of the hearing. Further, it is interesting to note that the order complained of by the relator and entered by the court on November 15, complied exactly with the agreement of the mother's attorney and the guardian ad litem to structure the annuity as they re-

quested. Taffidie's mother has withdrawn all opposition to the trial court's investment in an annuity.

### No Objection to Annuity Constitutes Waiver

■ All parties were before the court at the hearings discussed above and had notice of exactly what occurred, and there were no procedural objections made by any of the parties to this suit. In order to preserve a complaint in the trial court, a party must assert the complaint, *Jones v. LaFargue*, 758 S.W.2d 320, 324 (Tex. App.—Houston [14th Dist.] 1988, writ denied), request relief within time permitted by rules and decisions, *Lemons v. EMW Mfg. Co.*, 747 S.W.2d 372, 373 (Tex.1988), obtain a ruling from the trial court, and make a record. TEX.R.APP.P. 52(a). At no time during any of the hearings before the trial court did any party object to the alleged failure of the trial court to proceed on application, nor did any party object to the order for investment of funds in the annuity. As such, the error of the trial court, if any, has been waived. *Fenno v. Jacobe*, 657 S.W.2d 844, 847 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

### Conclusion

■ We are unable to conclude that, under the facts of this record, respondent clearly abused his discretion by ordering investment of the funds in an annuity. He acted in accordance with authority granted him under section 142.001(a) of the Texas Property Code. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). Respondent did not act in an *arbitrary or unreasonable fashion, without reference to guiding rules and principles.* *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The best interest of the child is a guiding principle, which we find respondent followed. Respondent had the following reasons for investing the funds in an annuity: 1) under the annuity, payments to Taffidie would begin almost immediately; 2) there would be tax benefits in investing in an annuity; 3) investing in an annuity would be best for the safety and welfare of Taffidie; 4) the

funds in the annuity would be tax-free, per the testimony of the witnesses; and 5) the annuity was a safe, stable investment because of the strength of Metropolitan Life Insurance Company.

A trial court is in the best position to take into account the totality of circumstances to best protect the property of the minor. "[T]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done him" *duPont v. Southern Nat'l Bank*, 771 F.2d 874, 882 (5th Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986).

We hold that Judge Moore did not clearly abuse his discretion by investing in an annuity, because he did not violate a duty imposed by law, and he did not act in an arbitrary or unreasonable fashion without reference to guiding rules and principles. *Johnson*, 700 S.W.2d at 917; *Downer*, 701 S.W.2d at 241–42.

We deny the writ of mandamus.

O'CONNOR, Justice, dissenting.

I dissent. The threshold question we should answer in these two mandamus actions is whether Judge Moore had the authority to appoint a guardian ad litem after the judgment was final.

There are presently two courts that are involved with this child. Judge Moore's court has jurisdiction over the assets of the personal injury suit. Judge Lowry's court has jurisdiction over the person of the child.

There are presently two parties who are attempting to represent the interests of the child. The Wonzers, who are the child's grandparents and are the temporary managing conservators appointed by Judge Lowry, are acting as next friends. Mr. Coghlin, who was appointed by Judge Moore, is acting as a guardian ad litem.

If it is permissible for a trial court to appoint a guardian ad litem after the litigation has terminated and after the judgment has become final, the guardian ad litem

would supplant and displace the next friend. If it is not permissible for a trial court to appoint a guardian ad litem after the litigation has terminated and after the judgment has become final, only the next friend could represent the child in that court. Either the guardian or the next friends should represent the child in Judge Moore's court. Both cannot.

Rule 173 of the Texas Rules of Civil Procedure states the following:

> When a minor ... is a party to a suit either as plaintiff, defendant or intervenor and is represented by a next friend of guardian who appears to the court to have an interest adverse to such minor ... the court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his services to be taxed as part of the costs.

(Emphasis added.) Presumably, rule 173 requires that the minor be a party to a suit before the court can appoint a guardian ad litem. If the judgment is final and not appealable, the minor is no longer a "party to a suit."

Here, the guardian ad litem was appointed after the suit was settled and after the judgment had become final. The sole purpose of the guardian ad litem seemed to be to represent Judge Moore, the respondent, in the motion to rehear the mandamus.

The trial court can appoint a guardian ad litem only for specific purposes and his powers are limited to matters connected with the suit in which he is appointed. *Durham v. Barrow*, 600 S.W.2d 756, 761 (Tex.1980); *Pleasant Hill Children's Home v. Nida*, 596 S.W.2d 947, 951 (Tex. App.—Fort Worth 1980, no writ). A guardian ad litem's appointment ends when a judgment is entered in the suit in which he was appointed. *Barrow v. Durham*, 574 S.W.2d 857, 860 (Tex.App.—Corpus Christi 1978) *aff'd*, 600 S.W.2d 756 (Tex. 1980).

If Judge Moore's appointment of a guardian ad litem was proper, the guardian ad litem displaced the next friends. *See Newman v. King*, 433 S.W.2d 420, 421 (Tex.1968) ("[D]isplacement of the next friend with a court appointed guardian ad litem ... is authorized only when it 'ap-

pears to the court' that the next friend has an interest 'adverse to the minor.' "); *Kennedy v. Missouri Pac. R.R.*, 778 S.W.2d 552, 555 (Tex.App.—Beaumont 1989, writ denied) ("Displacement of the next friend with a guardian ad litem is authorized only when it appears to the court that the next friend has an interest adverse to the person represented."); *Hall v. Birchfield*, 718 S.W.2d 313, 319 (Tex.App.—Texarkana 1986) *rev'd on other grounds*, 747 S.W.2d 361 (Tex.1988) ("Caution should dictate the displacement in every legal preceding which the pleading or the evidence indicates a reasonable possibility of adverse interest"). In that case, the next friends have no standing to challenge the investment decision of the trial court.

If Judge Moore's appointment of the guardian ad litem was not proper, the next friends have not been displaced by the guardian ad litem. In that case, the guardian ad litem has no standing to challenge the mandamus this Court issued on January 29, 1992.

Because the child in this case was not involved in a lawsuit at the time the guardian ad litem was appointed, I would hold that the appointment was not authorized by rule 173.

I would grant the mandamus filed by the Wonzers in cause number 92–00188–CV, direct Judge Moore to rescind his order appointing the guardian ad litem, and deny the motion for rehearing in cause number 91–01160–CV.