**Linda Michelle SOSA, a Minor, By and Through her Guardian Ad Litem, Joseph GRANT, Appellant,**

**v.**

**Saramma Abraham KOSHY, McDonald's Corporation, Gordon Miller, Individually, and McTex # 1, Inc., Appellees.**

**No. 01–94–00678–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 21, 1997.

Rehearing Overruled Nov. 6, 1997.

---

Edward P. Watt, Austin, for Appellant.

John B. Wallace, James D. Ebanks, Houston, for Appellees.

Before HEDGES, ANDELL and HUTSON–DUNN,* JJ.

**OPINION**

HEDGES, Justice.

This suit arises from an auto-pedestrian accident. The appellant, ten-year-old Michelle Sosa, was hit by a car while crossing a McDonald's parking lot. She sued McDonald's Corporation, McTex # 1, Inc., and Gordon Miller (collectively, McDonald's) and Saramma Abraham Koshy, the driver of the

---

* The Honorable D. Camille Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

vehicle. A jury found that Sosa was 55% at fault for her own injuries, McDonald's Corporation was 40% at fault, McTex # 1, Inc. was 5% at fault, and the driver, Koshy, was 0% at fault. Based on this verdict, the trial court entered a take-nothing judgment in favor of the defendants. Sosa appeals challenging (1) several evidentiary rulings, and (2) the factual sufficiency of the evidence. We affirm.

## JURISDICTION

■ Before we reach the merits of this case, we must first consider a challenge to our jurisdiction. In a cross-point of error, the appellees contend that because Sosa's guardian ad litem, Joseph Grant, has no standing to bring this appeal on Sosa's behalf, we have no jurisdiction to hear this case.

■ Standing is a component of subject matter jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993). It cannot be waived and may be raised for the first time on appeal. *Id.* Subject matter jurisdiction is essential to the authority of this Court to decide a case. *Id.* at 443. An opinion issued in an appeal brought by a party with no standing would be an advisory opinion. *Id.* at 444.

■ Joseph Grant, Sosa's guardian ad litem, was appointed in the trial court below pursuant to rule 173 of the Texas Rules of Civil Procedure. This rule authorizes the appointment of a guardian ad litem only when a minor is represented by a next friend or guardian who appears to the court to have an interest adverse to the minor. TEX.R. CIV. P. 173. When the conflict of interest no longer exists, the trial court should remove the guardian ad litem. *Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex.1992).

The appellees argue that there is no conflict between Sosa and her parents because the parents are no longer parties to this appeal.[1] Therefore, the appellees argue, the ad litem no longer has the authority to prosecute the appeal on behalf of Sosa.

■ The term "ad litem" means "for the suit." *Brownsville–Valley Reg'l Med. Ctr.,*

*Inc. v. Gamez*, 894 S.W.2d 753, 756 (Tex. 1995). A guardian ad litem's representation is limited to matters related to the suit for which he or she is appointed. *Grunewald v. Technibilt Corp.*, 931 S.W.2d 593, 595 (Tex. App.—Dallas 1996, writ denied); *Byrd v. Woodruff,* 891 S.W.2d 689, 705 (Tex.App.—Dallas 1994, writ dism'd by agr.) The guardian ad litem should participate in the case to the extent necessary to adequately protect the minor's interest and has considerable latitude in determining what activities are necessary to that effort. *Grunewald,* 931 S.W.2d at 595; *Byrd,* 891 S.W.2d at 706. Typically, the guardian ad litem's duties and powers end when a final judgment is entered. *Byrd,* 891 S.W.2d at 710. When the judgment is no longer appealable, the minor is no longer a party to the action; therefore, the guardian ad litem no longer has authority to act for the minor. *Id.; see Durham v. Barrow,* 600 S.W.2d 756, 761 (Tex.1980).

■ A guardian ad litem can: (1) *prosecute an appeal from the trial court in which the guardian was appointed;* (2) remove, under the proper circumstances, a suit to federal court from state court; and (3) initiate an extraordinary proceeding, such as a writ of mandamus or prohibition, on behalf of a minor whom the guardian was appointed to represent. *Grunewald,* 931 S.W.2d at 595; *Pleasant Hills Children's Home of the Assemblies of God, Inc. v. Nida,* 596 S.W.2d 947, 951 (Tex.Civ.App.—Fort Worth 1980, no writ).

In *McGough v. First Court of Appeals,* 842 S.W.2d 637, 639 (Tex.1992), the trial court appointed a guardian ad litem for the minor before the trial. Before a jury verdict was reached, the parties reached a settlement agreement, a judgment was entered, and the guardian ad litem was dismissed. *Id.* The trial court then appointed a new guardian ad litem to represent the minor in a post-judgment mandamus proceeding *and any appeal* from its judgment. *Id.* at 640. The supreme court approved the appointment of the second ad litem noting that a guardian ad litem may have usefulness for all stages of a case, not just the trial. *Id.* In *McGough,* there

---

1. We dismissed the appeal by Sosa's parents    because they did not file an appeal bond.

were continuing conflicts between the minor and her grandparents. *Id.* Specifically, the grandparents had a personal interest in handling the minor's settlement fund, receiving compensation for their services as managing conservators, and in the minor's inheritance should she predecease them. *Id.*

Similarly, in this case there are continuing potential conflicts between Sosa and her parents. The parents have an interest in managing any funds she recovers. They could also attempt, even post-judgment, to settle their own claims against the appellees to the detriment of Sosa. Until there is a final, nonappealable judgment, the guardian ad litem continues to represent the best interests of the minor.

We conclude that Joseph Grant has the power to prosecute this appeal on behalf of Sosa. We overrule the appellees' cross-point of error.

## BACKGROUND

One day after school, Sosa and her mother drove to McDonald's for supper. After ordering from the drive-thru, Sosa decided that she wanted some french fries. Sosa went inside, ordered and paid for her fries, and was returning to her mother's car when she was hit by Koshy, a McDonald's employee who was on her way home. Sosa was knocked to the ground and dragged by the car for several feet. She was life-flighted to Hermann Hospital, where she stayed for three days. She generally recovered but continues to have a few lingering effects.

## EVIDENTIARY RULINGS

### I. Hearsay

#### A. Statements by unknown eyewitnesses

In point of error two, Sosa contends that the trial court erred when it admitted hearsay statements of eyewitnesses through the testimony of Pasadena Police Officer Steven Null. Officer Null, who investigated the accident at the scene, was offered by the defendants as an expert on accident reconstruction. He testified that he based his opinion about how the accident occurred, in part, on statements that he took from unnamed witnesses at the scene of the accident. Sosa argues that the statements of these unnamed witnesses are hearsay and that the trial court erred by allowing Officer Null to testify about the statements. In particular, Sosa points to three instances in which Officer Null referred to comments made by third parties. We will address each statement individually.

Q: Okay. And in determining where the child started off, at the door or inside the store, and sort of the route that she took to get to the point where the collision occurred, what factual information were you relying on?

Officer Null: There was a man in this vehicle here that was waiting for food to be brought to him, saw the little girl—saw basically the whole accident; and the mother, when I talked to her. This lady here, if I remember, she—the driver of this car—really didn't know where the little girl came from. She just appeared. I believe there was some other witnesses I talked to just in the general area. And that's how I determined how she approached in the parking lot.

Although Sosa later obtained a running hearsay objection to all of Null's testimony about third party comments, the above-referenced portion of Null's videotaped deposition was played to the jury **before** Sosa raised her hearsay objection. Sosa waived her complaint about this testimony by not making a timely objection. TEX.R.APP. P. 52(a).

Sosa also complains about the following testimony by Officer Null:

Question: All right. Were you able to identify, from talking to the witnesses that had seen the accident or from the facts themselves, whether the child was running, walking or anything in between.

Officer Null: The witnesses said that the child just ran from the sidewalk into the road—into the driveway.

Question: Tell us whatever the facts were about where the child was going when the accident happened.

Officer Null: Okay. Well, it was suggested that—or what I believe happened was that

the child—when it came out of the store with whatever product she had obtained in the store—I don't recall what it is—when it was—her mother was waiting at the car. I think she was just trying to return to her mother's car.

Again, the above-referenced excerpt from Officer Null's videotaped deposition was played to the jury before Sosa obtained a running hearsay objection. Therefore, her complaint is waived. TEX.R.APP. P. 52(a).

Sosa's last hearsay complaint involves the following exchange:

Question: Now you say that there's no indication that the driver was using excessive, you're basing that primarily on the lack of skid marks, correct?

Officer Null: No, sir. I mean, from the injuries received, the no skid marks—that's one thing—that's basically the two things I really looked at there. Also, the witnesses that I talked to—no one indicated that she was just on the accelerator or really driving fast. So there was nothing really present there to indicate to me that she was unreasonable in the speed that she was traveling in that parking lot. And that's the reason it's not included in my report.

Question: Do you recall anyone else specifically that you asked about the speed?

Officer Null: No, sir. there—there were several people at the scene I talked to. One of the reasons I remember this truck driver—I'm sorry I can't tell you his name, but I knew him before the accident. He was like a firefighter in Pasadena or something like that, and I can't remember—I can—I can see his face, but I can't place a name with him.

This exchange took place after Sosa obtained a running hearsay objection to Officer Null's testimony. Therefore, we will address the merits of her hearsay complaint as it relates to this portion of Officer Null's testimony.

■■■ The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). For the admission or exclusion of evidence to constitute reversible error, an appellant must show (1) that the trial court committed error, and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992).

### 1. No error

■■■ Sosa contends that Officer Null's testimony was inadmissible hearsay because it implied that unidentified declarants at the scene of the accident told Null that Koshy was not speeding when she hit Sosa.

However, Officer Null testified as an expert on accident reconstruction. The Rules of Civil Evidence provide that an expert may rely on inadmissible evidence, and may disclose the basis for his opinion.

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or reviewed by the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence.*

TEX.R. CIV. EVID. 703 (emphasis added).

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. *The expert may in any event disclose on direct examination,* or be required to disclose on cross-examination, *the underlying facts or data.*

TEX.R. CIV. EVID. 705 (emphasis added).

Sosa argues that despite rules 703 and 705, an expert should not be allowed to recount hearsay testimony, even if that evidence forms the basis of his opinion. In support, Sosa cites *Birchfield v. Texarkana Mem. Hosp.,* 747 S.W.2d 361, 365 (Tex.1987). In *Birchfield,* the court held that it was error for an expert to testify to a conversation that he had with another expert, but that the error was harmless because the testimony was cumulative of other evidence. *Id.* However, the *Birchfield* court did not discuss the

effect of rules 703 and 705 on the general prohibition against hearsay evidence.

■ In *Decker v. Hatfield*, 798 S.W.2d 637, 638 (Tex.App.—Eastland 1990, writ dism'd), the court noted that *Birchfield* has been criticized and stated:

> This language [from *Birchfield* ], contained in dictum and made without reference to Rules 703 and 705, is ill-considered and overbroad. The design of these rules was to allow experts to testify in a way consistent with the manner in which they conduct their professional activities. *If an expert has relied upon hearsay in forming an opinion, and the hearsay is of a type reasonably relied upon by such experts, the jury should ordinarily be permitted to hear it.* Exclusion is proper only when the court finds that the danger that the jury will improperly use the hearsay outweighs its probative value for explanatory purposes.

*Id.,*(quoting, 1 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 705.3 (1988) (emphasis added)). We cannot help but agree that under rules 703 and 705, an expert is allowed to rely on hearsay evidence in reaching his conclusions and may testify about the basis for his conclusions, subject to an objection under TEX.R. CIV. EVID. 403 that its probative value is outweighed by the risk of prejudicial harm.

We believe that *Birchfield* is distinguishable, because rule 705 has been amended since it was tried. At the time *Birchfield* was tried, rule 705 read as follows:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. *The expert may in any event be required to disclose the underlying facts or data on cross-examination.*

Tex.R. Civ. Evid. 705, 641–42 S.W.2d LV (Tex.1983, amended 1984)(emphasis added). The rule appears to limit the introduction of underlying data to the benefit of the non-

offering party for purposes of impeachment. The sponsoring party could not offer the hearsay evidence in support of its position.

After *Birchfield* was tried, the last line of rule 705 was amended to provide: "The expert may in any event *disclose on direct examination,* or be required to disclose on cross-examination, the underlying facts or data." TEX.R. CIV. EVID. 705 (emphasis added). This version of rule 705 is broader than its predecessor: it specifically allows the expert, on direct examination, to give the underlying facts and data upon which his opinion is based. Now the sponsoring party is permitted to offer the testimony in support of its contention.

Under rule 703, Officer Null, as an expert on accident reconstruction, properly relied on hearsay evidence provided by eyewitnesses to the accident if experts in his field would reasonably rely on such evidence.[2] Under rule 705, he is permitted to disclose on direct examination the facts underlying his conclusions, including the hearsay evidence provided by the eyewitnesses. Sosa did not raise a rule 403 objection that the risk of prejudice outweighed the evidence's probative value. The trial court did not abuse its discretion by allowing Officer Null to testify about the statements made by eyewitnesses at the scene of the accident.

### 2. No harm

■ Furthermore, error, if any, was harmless because it was cumulative of other evidence that showed Koshy was not speeding. Officer Null testified several times that he did not think that excessive speed was a factor in this accident. He based this not only on eyewitness reports, but also on the absence of skid marks at the scene and the minimal amount of damage to the car. Sosa's expert, Dr. Richard Bernicker, testified that Koshy was driving between five and 10 miles per hour, or "relatively slowly." Dr. Harvey Cohen, another of Sosa's experts, testified that Koshy was proceeding very

---

2. Sosa does not challenge an accident reconstruction expert's right to rely on eyewitness hearsay, she merely contends that the expert cannot testify about such evidence. We note that

Sosa's own expert testified that he, too, relied on third party statements by eyewitnesses when forming his opinion of Koshy's speed.

slowly through the parking lot. Shani Kimes–Landry, a McDonald's employee and eyewitness to the accident, testified that she believed Koshy was going "no faster" than five to seven miles per hour. She also testified that Koshy had a reputation as a "poky" driver. Koshy, the driver, testified that she was driving no faster than five miles per hour when she hit Sosa.

The erroneous admission of evidence that is cumulative of other evidence in the record is ordinarily not reversible error. *INA of Texas v. Torres*, 808 S.W.2d 291, 299 (Tex.App.—Houston [1st Dist.] 1991, no writ). As a general rule, error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984).

In light of the numerous references to Koshy's lack of excessive speed, error, if any, in admitting Officer Null's testimony was harmless.

We overrule point of error two.

### B. Admission of exhibits containing hearsay

In point of error seven, Sosa contends that the trial court erred by admitting Officer Null's police report and diagram into evidence. She argues that the exhibits were based on inadmissible hearsay statements made by eyewitnesses at the scene of the accident. As stated in our analysis of point of error two, an expert may rely on hearsay in forming his opinion and may testify about the basis for his opinion. TEX.R. CIV. EVID. 703 & 705.

We overrule point of error seven.

### C. Incomplete statement of facts

In point of error eight, Sosa contends that she preserved her hearsay complaint about Officer Null's police report and diagram during a pretrial hearing. She argues that she was unable to obtain a statement of facts

from that hearing because the court reporter died. In light of our disposition of point of error seven on its merits, we need not address point of error eight.

## II. Relevancy

In point of error three, Sosa contends that the trial court erred when it allowed Officer Null to testify about a traffic statute inapplicable to the case. During Officer Null's videotape deposition, the following exchange took place:

Defense Counsel: Okay. In a situation like this, in a parking lot even, does one of these people, the pedestrian or the driver, have the legal right-of-way as they move through the parking lot?

Officer Null: Yes, sir. As a general rule, the vehicle does.

Officer Null later clarified his answer to state that the law on right-of-ways did not apply because the accident did not occur in a public roadway.

Defense Counsel: Okay. Do you know if there is a rule of the road about right-of-ways where there's no crosswalks or anything like that?

Officer Null: Yes, Sir. Well, if it applied to a roadway, of course the law would apply. Since it's a private parking lot, the law doesn't apply to the private parking lot. But if this had been a public roadway, then, the vehicle would have the right-of-way and the pedestrian would have to yield to the vehicle.

The admission and exclusion of evidence is committed to the trial court's sound discretion. *Alvarado*, 897 S.W.2d at 753; *Gee*, 765 S.W.2d at 396. A party seeking reversal based on evidentiary error must show that the error probably resulted in the rendition of an improper judgment. *Alvarado*, 897 S.W.2d at 753.

Sosa contends that the trial court erred by admitting this testimony because, by Officer Null's own admission, the statute on right-of-way[3] was not applicable to this case because

---

3. Presumably, Officer Null was referring to former TEX.REV.CIV. STAT. ANN. art. 6701d, § 78(a), which provided:

> Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersec-

it occurred in a parking lot, not on a public roadway. The appellees argued that even though the statute was not applicable, it was relevant to show the standard of care required by pedestrians.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

TEX.R. CIV. EVID. 401.

Officer Null made it clear during his testimony that the statute was not applicable to the situation, but that he was applying its rule by analogy. He testified that while a driver has the obligation to use reasonable care, it is the pedestrian's responsibility to ensure that the path is clear of traffic before crossing. In the officer's opinion, the reason the responsibility generally falls on the pedestrian is because it is easier for a pedestrian to detect a car than it is for a driver to detect a pedestrian.

The fact that the statute gives a vehicle the right-of-way over a pedestrian in a public roadway would lend credence to Officer Null's theory that a pedestrian is better able to prevent an accident. Because the statute had *some tendency* to corroborate Officer Null's testimony about a pedestrian's standard of care, the evidence was relevant. The trial court did not abuse its discretion by permitting the testimony.

We overrule point of error three.

## III. Exclusion of evidence

■ In point of error four, Sosa contends that the trial court erred by excluding the following portion of Officer Null's deposition testimony:

Officer Null: ... I was looking at it [the investigation] from a criminal responsibility. If the little girl would've—would have been killed by the accident, you know, then—that's unfortunate—then, that would probably have been more in line with a negligence-type investigation that you'd—that—that we'd have done in a—on a criminally negligent homicide, say, case or something that would've had to be considered along those lines. But in this situation, you know, it was—it was not applicable.

Defense Counsel: Because what you were trying to do was assess fault between the driver and the girl and not necessarily McDonald's because of the way they constructed the building, correct?

Officer Null: Right. I didn't—you know, that's—the environment or the design is not—

Defense Counsel: You weren't—

Officer Null:—in this case wasn't applicable to, you know, how the accident occurred.

Sosa contends that the trial court should have admitted the testimony because it was necessary to show that Officer Null was conducting a criminal investigation at the scene of the accident and was not really considering civil premises liability.

The admission and exclusion of evidence is committed to the trial court's sound discretion. *Alvarado,* 897 S.W.2d at 753; *Gee,* 765 S.W.2d at 396. A party seeking reversal based on evidentiary error must show that the error probably resulted in the rendition of an improper judgment. *Alvarado,* 897 S.W.2d at 753.

In this case, the trial court did not allow counsel to introduce any evidence that inquired into Officer Null's criminal investigation or his assessment of fault between the parties in a criminal context. However, she did allow Sosa to introduce testimony from Officer Null that, although he noted that an obstructed view caused by the drive-thru may have contributed to the accident, he did not note that possibility in his report because he was not investigating the lawsuit from "a civil responsibility area."

Therefore, the jury was made aware that Officer Null was conducting a criminal inves-

tion shall yield the right-of-way to all vehicles upon the highway.
Act of June 18, 1947, 50th Leg., R.S., ch. 421, 1947 Tex. Gen. Laws 967, *repealed by* Act of April 21, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1871 (Current version at TEX. TRANSP. CODE ANN. § 552.005 (Vernon 1997)).

tigation and was not attempting to establish fault in a civil liability context when he prepared his report. Sosa has not shown that the exclusion of the evidence probably caused rendition of an improper judgment.

We overrule point of error four.

## IV. The accident reconstruction video

■ In point of error five, Sosa contends that the trial court erred by refusing to grant a new trial. She argues that the trial court was "hoodwinked" into admitting an accident reconstruction video based on a "false predicate."

Defendant's liability expert, Kenneth Sorenson, prepared a video reconstruction of the accident. Sorenson testified that the video was substantially similar to the conditions existing at the time of the accident. Based on this predicate, the court allowed the videotape to be played to the jury.

On cross-examination Sorenson admitted: (1) that the video showed no cars in the drive-thru even though on the day of the accident there were three or four cars in the drive-thru; (2) the video showed a white pick-up even though Koshy was driving a car; and (3) the video was made on a sunny day, but the accident occurred on an overcast day. Sosa argues that, despite Sorenson's predicate testimony to the contrary, the video was not substantially similar to the actual accident scene.

■ When an experiment is conducted out of court and in the absence of opposing counsel, there must be a substantial similarity between the conditions depicted on the videotape and the actual event that is the subject of litigation. *Fort Worth & Denver Ry. v. Williams*, 375 S.W.2d 279, 281–82 (Tex.1964). However, the conditions do not need to be identical. *Id.* at 282; *Garza v. Cole*, 753 S.W.2d 245, 247 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). When there is dissimilarity in the conditions, the admission of the experiment is within the trial court's discretion if the differences are minor or are explained to the jury. *Williams*, 375 S.W.2d at 282.

In this case, the expert, Sorenson, was vigorously cross-examined about the differences between his reconstruction video and the actual events. The comparative differences about the experiment go to its weight, not its admissibility. *Garza*, 753 S.W.2d at 247.

The trial court did not abuse its discretion in admitting the videotape or in denying a new trial on the same grounds.

We overrule point of error five.

## V. Admission of expert witness testimony

■ In point of error six, Sosa contends the trial court erred by allowing the appellees' expert, Kenneth Sorenson, to testify, because consulting experts, upon whom Sorenson relied, were not disclosed in response to discovery requests. Specifically, Sosa complains that many of the measurements, photographs, and calculations that Sorenson relied on in forming his opinion were actually prepared by two of his employees, Steven Hubnik and Gary Nicholson.

The consulting expert privilege protects the identity, mental impressions and opinions of an expert "who has been *informally consulted* or of an expert who has been *retained* or *specially employed by another party*" in anticipation of litigation. Tex.R. Civ. P. 166b(3)(b). The privilege does not apply if the consulting expert's opinion or impressions have been reviewed by the testifying expert. *Id.*

In this case, even though Sorenson relied on Hubnik and Nicholson's work, they are not consulting experts. McDonald's and Koshy retained and designated "Ken Sorenson, Invetech" as their testifying expert. Hubnik and Nicholson are mere employees of Invetek. Hubnik and Nicholson were not informally consulted, retained, or specially employed by a party, *i.e.*, McDonald's or Koshy. The fact that Sorenson relied on their work does not necessarily make them consulting experts.

■ Hubnik and Nicholson may be fact witnesses. They went to the McDonald's and took still photographs, measurements, and video. But because Sosa never argued to the trial court that Hubnik and Nicholson

were fact witnesses, the contention is waived. Tex.R.App. P. 52(a).

We overrule point of error six.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

In point of error one, Sosa contends that if we disregard Officer Null's testimony, which was based on hearsay, the evidence is factually insufficient. However, we have held that the trial court did not abuse its discretion by admitting Officer Null's testimony. Therefore, we will review all the evidence, including Officer Null's testimony, to determine whether the evidence is factually sufficient.[4]

■ In reviewing factual sufficiency, we must first examine all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex.App.—Houston [1st Dist.] 1993, writ denied). After considering and weighing all of the evidence, we will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Hollander*, 853 S.W.2d at 726. We cannot substitute our opinion for that of the jury. *Hollander*, 853 S.W.2d at 726.

Appellant contends that the "undisputed" evidence shows that the driver, Koshy, (1) failed to keep a proper lookout, and (2) was driving at an excessive speed.

The undisputed facts showed that Sosa's mother went through the drive-thru to order. Sosa forgot to order french fries, so she went inside for them while her mother parked the car. Sosa got her fries and walked out of the restaurant to return to her mother's car. She walked along the sidewalk for some distance and then began to cross first the drive-thru area and then the parking lot. As she was crossing the parking lot, she was struck by Koshy.

4. Had we found that Officer Null's testimony was improperly admitted, we would have disregarded it when conducting our sufficiency review. *See*

## I. Evidence on proper lookout

■ Koshy testified that she did not see Sosa until she was 1 to 2 feet from the car; then she saw only her face. The accident occurred almost immediately. Sosa contends that this evidence conclusively established that Koshy failed to keep a proper lookout.

However, Koshy's expert, Kenneth Sorenson, testified that although Sosa would have been visible to Koshy for 3.3 seconds prior to impact, Koshy would have had no reason to react until Sosa left the curb and began crossing the parking lot. Once Sosa left the sidewalk, she had to travel 17 feet to Sorenson's estimated point of impact. Sorenson testified that Sosa could easily have covered this distance in 1 to 1 1/2 seconds. Therefore, Koshy would have had less than 2 seconds in which to react. Sorenson testified that Koshy probably would not have had adequate time to prevent the accident.

Appellant disputes Sorenson's recreation on the basis that there is no evidence that Sosa was running in the parking lot. We disagree. Bert Dill, an eyewitness, testified that Sosa was walking at first, and then she broke into a "trot." Guadelupe Lopez, another eyewitness, testified that Sosa was "walking fast."

Sorenson testified that when he recreated the accident, he determined how fast Sosa was likely travelling by performing an experiment with his own daughter, who was near Sosa's age. When his daughter was running, she covered 11 feet per second. When she was walking, she covered 3 1/2 feet per second. When he recreated the accident, he used a mid-range figure of 8 1/2 feet per second. The jury could have concluded that this figure accurately coincided with the witnesses' testimony that Sosa was travelling at a "trot" or "walking fast." Based on a speed of 8 1/2 feet per second, he concluded that Sosa could have covered the 17 feet from the curb to impact in 1 to 1 1/2 seconds, too quickly for Koshy to respond.

In addition to Sorenson's recreation, Officer Null, the investigating police officer, tes-

*Marshall v. Telecommunications Specialists, Inc.*, 806 S.W.2d 904, 907 (Tex.App.—Houston [1st Dist.] 1991, no writ).

tified that several witnesses told him that the child ran from the sidewalk into the road. Shani Kimes–Landry, a McDonald's employee who was an eyewitness, testified that she did not think that Koshy had time to avoid the collision. Koshy herself testified that she was keeping a proper lookout and that Sosa's face just suddenly appeared.

Having heard all the evidence, the jury could rationally have concluded that even though Koshy was keeping a proper lookout, Sosa ran in front of the car. In fact, Sosa's own expert, Dr. Bernicker, testified that even if Koshy had been perfectly attentive, the accident could have still have occurred because the drive-thru created a visual obstruction. Another of Sosa's experts, Dr. Cohen, testified that the layout of the drive-thru served to diminish any liability on the part of Koshy.

The jury's implied finding that Koshy kept a proper lookout is not against the great weight and preponderance of the evidence.

## II. Evidence on excessive speed

■ Appellant also contends that the undisputed evidence shows that Koshy was speeding. In support of her contention, Sosa points to the testimony of eyewitnesses Bert Dill and Guadelupe Lopez. Lopez, who did not see Koshy's car until after the impact, estimated that she was driving 15 to 20 m.p.h. Dill also believed that Koshy was driving 15 to 20 m.p.h.

This evidence was contradicted by Koshy, who testified that she was driving no faster than five m.p.h. Shani Kimes–Landry testified that she thought Koshy was travelling five to seven m.p.h., but conceded that it might have been more. Officer Null testified that he did not believe that Koshy's speed was a factor in the accident. He based this conclusion on witness statements at the scene, the lack of skid marks in the parking lot, and the minimal amount of damage to the car. In creating his accident reconstruction, Sorenson estimated that Koshy's probable speed was seven m.p.h.

Although the evidence about Koshy's speed was conflicting, we cannot say the jury's implied finding of no excessive speed was against the great weight and preponderance of the evidence.

We overrule point of error one.

We affirm the judgment of the trial court.