K.H.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-301-CV

THE STATE OF TEXAS FOR THE BEST

INTEREST AND PROTECTION OF K.H.

------------

FROM THE PROBATE COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

K.H. appeals the probate court’s temporary commitment order finding that she is mentally ill and likely to cause serious harm to herself.  We will affirm.

On July 1, 2002, Judy Stelzer, K.H.’s aunt, filed an application for temporary mental health services.  This same day, the probate master issued an order of protective custody.  The probate master held a temporary commitment hearing on July 15, 2002.  At the hearing and over K.H.’s objection, the master took judicial notice of the contents of the court’s file, including two certificates of medical examination filed by nontestifying physicians.
(footnote: 2)  Dr. James Shupe testified that K.H. was likely to cause serious harm to herself.  He stated that he based his diagnosis and recommendations on his review of the certificate of medical examination (“CME”) filed by Dr. Wagner,
(footnote: 3) a twenty to twenty-five minute interview with K.H., and discussions with K.H.’s aunt regarding K.H.’s behavior. 

When the State rested, K.H. asked the court to enter a nonfinding because the State had failed to prove by clear and convincing evidence that K.H. had committed a recent overt act.  The probate master rejected K.H.’s request for a nonfinding and entered a judgment finding that K.H. is mentally ill and likely to cause serious harm to herself. 

Pursuant to section 54.618 of the Texas Government Code, K.H. filed a notice of appeal to the trial court.
(footnote: 4)  On appeal, K.H. contended that the master erred by taking judicial notice of the contents of the CMEs because they contained hearsay and conclusory statements.  She also alleged that there was insufficient evidence to prove that she committed the alleged overt act recently.  The trial court concluded that it could not consider the certificates as proof of the truth of the matters asserted therein.  However, the trial court found that it could consider them for the limited purpose of establishing that two certificates were filed, the certificates were prepared by persons asserting themselves to be medical doctors, the documents were relied upon by the testifying expert, and the preparers made certain diagnoses and recommendations.  The trial court also found that Dr. Shupe qualified as an expert and as an expert witness, he was “specifically authorized under the Texas rules of civil evidence to rely in forming opinions on documents, reports, records, treatises, interviews, statements, and other matters which if introduced themselves would be hearsay.”  As a result, the trial court adopted and ratified the master’s judgment.  K.H. then perfected her appeal to this court. 

In her first issue, K.H. complains that the probate master improperly admitted Dr. Shupe’s testimony because no threshold determination was made ensuring that Dr. Shupe’s testimony was based upon a reliable foundation.  At the temporary hearing, K.H. objected to Dr. Shupe’s testimony on the ground that his opinions were not reliable because they were based largely on hearsay rather than on Dr. Shupe’s personal knowledge. 

Under the rules of evidence, expert testimony is permitted if it will assist the trier of fact to understand the evidence or to determine a fact in issue.  
Tex. R. Evid
. 702.  A two-part test governs the admissibility of expert testimony:  (1) the expert must be qualified; and (2) the testimony must be relevant and be based on a reliable foundation.  
Helena Chem. Co. v. Wilkins
, 47 S.W.3d 486, 499 (Tex. 2001); 
E.I. du Pont de Nemours & Co. v. Robinson
, 923 S.W.2d 549, 556 (Tex. 1995).  In assessing the reliability of the expert’s testimony, 
the court must determine “whether ‘there is simply too great an analytical gap between the data and the opinion proffered.’”  
Gammill v. Jack Williams Chevrolet, Inc.
, 972 S.W.2d 713, 727 (Tex. 1998).  

An expert may base his opinion upon facts perceived by, reviewed by, or made known to the expert at or before the hearing.  
Tex. R. Evid.
 703.  If the evidence is of a type reasonably relied upon by experts in the field in forming opinions, the facts or data need not be admissible in evidence.  
Id
.  An expert is also allowed to rely on hearsay evidence in reaching his conclusions and may testify about the basis for his conclusions, subject to an objection that its probative value is outweighed by the risk of prejudicial harm.  
Sosa ex rel. Grant v. Koshy
, 961 S.W.2d 420, 426-27 (Tex. App.—Houston [1
st
 Dist.] 1997, pet. denied).

As noted, Dr. Shupe relied on the CME filed by a nontestifying physician, an interview with K.H., and discussions with K.H.’s aunt.  It is common practice for doctors to rely on medical reports, patient interviews, and interviews with members of the patient’s family in forming their expert opinions.  
See, e.g., Mezick v. State
, 920 S.W.2d 427, 430-31 (Tex. App.—Houston [1
st
 Dist.] 1996, no pet.).  
Therefore, because Dr. Shupe’s testimony was based on sources reasonably relied upon by experts in the medical field, the probate master did not abuse its discretion by concluding that Dr. Shupe’s testimony was reliable and by admitting the testimony.  We overrule K.H.’s first issue.

In issue two, K.H. makes two distinct arguments.  First, she contends that the probate master erred by taking judicial notice of the contents of the court’s file.  Second, she argues that without this evidence, there is not clear and convincing evidence that she committed a recent overt act and that the trial court improperly concluded that she posed a risk of serious harm to herself.

A court may take judicial notice of documents on file in a case, but it cannot take judicial notice of the truth of any allegations contained in the documents.  
Tschirhart v. Tschirhart
, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ).  Judicial notice should only be taken of facts that are capable of ready and accurate determination by resort to sources whose accuracy cannot reasonably be questioned.  
Tex. R. Evid.
 201(b).  

Here, 
the probate master took judicial notice of the contents of the court’s file, including the contents of two CMEs filed by nontestifying physicians.  
The probate master could not properly take judicial notice of the truth of the allegations contained within the certificates. 
See Tschirhart
, 876 S.W.2d at 508.  It was, however, proper for him to take judicial notice of the file to show that the documents were a part of the court’s files, that they were filed with the court on a certain date, and that the documents were before the court at the time of the hearing.  
See
 
Tex. R.  Evid
. 201; 
Fuller v. State
, 30 S.W.3d 441, 445 (Tex. App.—Texarkana 2000, pet. ref’d).  

Further, there is clear and convincing evidence that K.H. committed a recent overt act apart from the allegations in the CMEs. 
The court may order a proposed patient to receive temporary inpatient mental health services if the fact finder concludes from clear and convincing evidence that the proposed patient is mentally ill and is likely to cause harm to herself.  
Tex. Health & Safety Code Ann
. § 574.034(a)(2).  
Clear and convincing evidence is defined as that “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002); 
Transp. Ins. Co. v. Moriel,
 879 S.W.2d 10, 31 (Tex. 1994).  
This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings.  
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980);
 State v. Addington,
 588 S.W.2d 569, 570 (Tex. 1979); 
In re D.T.
, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).  While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed.  
Addington,
 588 S.W.2d at 570
.
 

This higher burden of proof alters the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002).  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id
.  In considering whether the evidence rises to the level of being clear and convincing, we must determine “whether, on the entire record, a factfinder could reasonably form a firm conviction or belief” that the allegations in the petition were proven.  
Id
. at 28. 

To be clear and convincing, the evidence supporting temporary involuntary commitment must include expert testimony and, unless waived, evidence of a recent overt act that tends to confirm the likelihood of serious harm to the proposed patient.
(footnote: 5)  
Tex. Health & Safety Code Ann. 
§ 574.034(d).  Expert diagnosis alone is not sufficient to confine a patient for compulsory treatment.  
Mezick
, 920 S.W.2d at 430.  The expert opinion and recommendations must be supported by a showing of the factual bases on which they are grounded.  
Id
.  There is, however, no requirement that the expert have personal knowledge of the overt acts committed by the patient.

At the hearing, Dr. Shupe testified that he had met personally with K.H., reviewed the CME prepared by Dr. Wagner, and conferred with K.H.’s aunt.  Based on his evaluation of K.H., Dr. Shupe diagnosed her as suffering from mood disorder not otherwise specified and oppositional defiant disorder.  Dr. Shupe testified that K.H. was very emotional, easily upset, impulsive, unable to follow redirection, and unable to make a rational decision regarding whether to submit to treatment.  He stated that K.H. told him that she had recently been placed in a body net because “she had gone crazy.”  
Based on her impulsivity, mood swings, lability, actions, and the fact that she had recently been placed in a body net, Dr. Shupe concluded that K.H. posed a serious risk of harm to herself and “wouldn’t be able to control herself safely outside the hospital.”  In Dr. Shupe’s opinion, for K.H., there were no less restrictive alternatives than in-patient treatment. 

In addition, Judy Stelzer, K.H.’s aunt, testified that K.H. had tried to harm herself on at least two occasions.  She testified that K.H. had attempted to overdose on Tylenol, but was stopped before she had ingested enough of the medication to cause serious problems.  On another occasion, K.H. stated that she was going to kill herself and then squirted Windex in her mouth and attempted to squirt Hot Shot in her mouth.  Stelzer stated that she phoned the Denton County authorities on the night K.H. squirted Windex in her mouth.  Then on July 1, 2002, Stelzer filed a sworn application for temporary mental health services on K.H.’s behalf.  Although Stelzer did not testify regarding the specific date that K.H. attempted to ingest the Windex, the trial court could have concluded from Stelzer’s testimony that the acts occurred on or about July 1, 2002.  

Based on the testimony of Dr. Shupe and Stelzer, we conclude that the trial court could have reasonably found by clear and convincing evidence that K.H. had committed a recent overt act and was likely to cause serious harm to herself.  
See Mezick
, 920 S.W.2d at 430-31 (holding testimony of a physician and sister sufficient to establish clearly and convincingly the necessary statutory criteria for temporary commitment).  
We overrule 
K.H.’s second issue.

Having overruled each of K.H.’s issues, we affirm the trial court’s judgment.

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED: June 19, 2003

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Dr. James Shupe, a licensed forensic psychiatrist, also filed a CME.  However, Dr. Shupe testified at trial.

3:
The health and safety code dictates that in order for a commitment hearing to be held, there must have been at least two CMEs for mental illness filed with the court by physicians.  
Tex. Health & Safety Code Ann. 
§ 574.009 (Vernon 2003).  At least one of the physicians must be a psychiatrist.  
Id
.  Here, each certificate was signed under oath by the attending physician stating that he is licensed to practice medicine in the State and each signature is followed by the designation “M.D.”  Further, Dr. Shupe testified that he is board certified in general forensic psychiatry. 

4:
Section 54.618 governs appeals from a probate master’s report.  
Tex. Gov’t Code Ann. 
§ 54.618 (Vernon Supp. 2003).

5:
Although K.H. contends that the State must show that she committed the overt act within the thirty days preceding the temporary commitment hearing, section 574.034 contains no such requirement.  
See 
Tex. Health & Safety Code Ann.
 § 574.034.  The State is only required to show that the required medical examinations occurred within the preceding thirty days.  
Id
. § 574.009(a).