K.H.




COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-301-CV
 
THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF K.H.
 
------------
FROM THE PROBATE COURT OF DENTON COUNTY
------------
MEMORANDUM OPINION(1)
------------
       
K.H. appeals the probate court's temporary commitment order finding that she is
mentally ill and likely to cause serious harm to herself.  We will affirm.
       
On July 1, 2002, Judy Stelzer, K.H.'s aunt, filed an application for temporary
mental health services. This same day, the probate master issued an order of
protective custody.  The probate master held a temporary commitment hearing
on July 15, 2002.  At the hearing and over K.H.'s objection, the master
took judicial notice of the contents of the court's file, including two
certificates of medical examination filed by nontestifying physicians.(2) 
Dr. James Shupe testified that K.H. was likely to cause serious harm to
herself.  He stated that he based his diagnosis and recommendations on his
review of the certificate of medical examination ("CME") filed by Dr.
Wagner,(3) a twenty to twenty-five minute
interview with K.H., and discussions with K.H.'s aunt regarding K.H.'s behavior.
       
When the State rested, K.H. asked the court to enter a nonfinding because the
State had failed to prove by clear and convincing evidence that K.H. had
committed a recent overt act. The probate master rejected K.H.'s request for a
nonfinding and entered a judgment finding that K.H. is mentally ill and likely
to cause serious harm to herself.
       
Pursuant to section 54.618 of the Texas Government Code, K.H. filed a notice of
appeal to the trial court.(4)  On appeal,
K.H. contended that the master erred by taking judicial notice of the contents
of the CMEs because they contained hearsay and conclusory statements. She also
alleged that there was insufficient evidence to prove that she committed the
alleged overt act recently. The trial court concluded that it could not consider
the certificates as proof of the truth of the matters asserted therein. However,
the trial court found that it could consider them for the limited purpose of
establishing that two certificates were filed, the certificates were prepared by
persons asserting themselves to be medical doctors, the documents were relied
upon by the testifying expert, and the preparers made certain diagnoses and
recommendations. The trial court also found that Dr. Shupe qualified as an
expert and as an expert witness, he was "specifically authorized under the
Texas rules of civil evidence to rely in forming opinions on documents, reports,
records, treatises, interviews, statements, and other matters which if
introduced themselves would be hearsay." As a result, the trial court
adopted and ratified the master's judgment. K.H. then perfected her appeal to
this court.
       
In her first issue, K.H. complains that the probate master improperly admitted
Dr. Shupe's testimony because no threshold determination was made ensuring that
Dr. Shupe's testimony was based upon a reliable foundation. At the temporary
hearing, K.H. objected to Dr. Shupe's testimony on the ground that his opinions
were not reliable because they were based largely on hearsay rather than on Dr.
Shupe's personal knowledge.
       
Under the rules of evidence, expert testimony is permitted if it will assist the
trier of fact to understand the evidence or to determine a fact in issue. Tex.
R. Evid. 702. A two-part test governs the admissibility of expert testimony: (1)
the expert must be qualified; and (2) the testimony must be relevant and be
based on a reliable foundation. Helena Chem. Co. v. Wilkins, 47 S.W.3d
486, 499 (Tex. 2001); E.I. du Pont de Nemours & Co. v. Robinson,
923 S.W.2d 549, 556 (Tex. 1995). In assessing the reliability of the expert's
testimony, the court must determine "whether 'there is simply too great an
analytical gap between the data and the opinion proffered.'" Gammill v.
Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 727 (Tex. 1998).
       
An expert may base his opinion upon facts perceived by, reviewed by, or made
known to the expert at or before the hearing. Tex. R. Evid. 703. If the evidence
is of a type reasonably relied upon by experts in the field in forming opinions,
the facts or data need not be admissible in evidence. Id. An expert is
also allowed to rely on hearsay evidence in reaching his conclusions and may
testify about the basis for his conclusions, subject to an objection that its
probative value is outweighed by the risk of prejudicial harm. Sosa ex rel.
Grant v. Koshy, 961 S.W.2d 420, 426-27 (Tex. App.--Houston [1st
Dist.] 1997, pet. denied).
       
As noted, Dr. Shupe relied on the CME filed by a nontestifying physician, an
interview with K.H., and discussions with K.H.'s aunt. It is common practice for
doctors to rely on medical reports, patient interviews, and interviews with
members of the patient's family in forming their expert opinions. See, e.g.,
Mezick v. State, 920 S.W.2d 427, 430-31 (Tex. App.--Houston [1st
Dist.] 1996, no pet.). Therefore, because Dr. Shupe's testimony was based on
sources reasonably relied upon by experts in the medical field, the probate
master did not abuse its discretion by concluding that Dr. Shupe's testimony was
reliable and by admitting the testimony. We overrule K.H.'s first issue.
       
In issue two, K.H. makes two distinct arguments. First, she contends that the
probate master erred by taking judicial notice of the contents of the court's
file. Second, she argues that without this evidence, there is not clear and
convincing evidence that she committed a recent overt act and that the trial
court improperly concluded that she posed a risk of serious harm to herself.
       
A court may take judicial notice of documents on file in a case, but it cannot
take judicial notice of the truth of any allegations contained in the documents.
Tschirhart v. Tschirhart, 876 S.W.2d 507, 508 (Tex. App.--Austin 1994,
no writ). Judicial notice should only be taken of facts that are capable of
ready and accurate determination by resort to sources whose accuracy cannot
reasonably be questioned. Tex. R. Evid. 201(b).
       
Here, the probate master took judicial notice of the contents of the court's
file, including the contents of two CMEs filed by nontestifying physicians. The
probate master could not properly take judicial notice of the truth of the
allegations contained within the certificates. See Tschirhart, 876
S.W.2d at 508. It was, however, proper for him to take judicial notice of the
file to show that the documents were a part of the court's files, that they were
filed with the court on a certain date, and that the documents were before the
court at the time of the hearing. See Tex. R. Evid. 201; Fuller v.
State, 30 S.W.3d 441, 445 (Tex. App.--Texarkana 2000, pet. ref'd).
       
Further, there is clear and convincing evidence that K.H. committed a recent
overt act apart from the allegations in the CMEs. The court may order a proposed
patient to receive temporary inpatient mental health services if the fact finder
concludes from clear and convincing evidence that the proposed patient is
mentally ill and is likely to cause harm to herself. Tex. Health & Safety
Code Ann. § 574.034(a)(2). Clear and convincing evidence is defined as that
"measure or degree of proof that will produce in the mind of the trier of
fact a firm belief or conviction as to the truth of the allegations sought to be
established." Tex. Fam. Code Ann. § 101.007 (Vernon 2002); Transp.
Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex. 1994). This intermediate
standard falls between the preponderance standard of civil proceedings and the
reasonable doubt standard of criminal proceedings. In re G.M., 596
S.W.2d 846, 847 (Tex. 1980); State v. Addington, 588 S.W.2d 569, 570
(Tex. 1979); In re D.T., 34 S.W.3d 625, 630 (Tex. App.--Fort Worth
2000, pet. denied) (op. on reh'g). While the proof must weigh heavier than
merely the greater weight of the credible evidence, there is no requirement that
the evidence be unequivocal or undisputed. Addington, 588 S.W.2d at
570.
       
This higher burden of proof alters the appellate standard of factual sufficiency
review. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). "[A] finding
that must be based on clear and convincing evidence cannot be viewed on appeal
the same as one that may be sustained on a mere preponderance." Id.
In considering whether the evidence rises to the level of being clear and
convincing, we must determine "whether, on the entire record, a factfinder
could reasonably form a firm conviction or belief" that the allegations in
the petition were proven. Id. at 28.
       
To be clear and convincing, the evidence supporting temporary involuntary
commitment must include expert testimony and, unless waived, evidence of a
recent overt act that tends to confirm the likelihood of serious harm to the
proposed patient.(5) Tex. Health & Safety
Code Ann. § 574.034(d). Expert diagnosis alone is not sufficient to confine a
patient for compulsory treatment. Mezick, 920 S.W.2d at 430. The expert
opinion and recommendations must be supported by a showing of the factual bases
on which they are grounded. Id. There is, however, no requirement that
the expert have personal knowledge of the overt acts committed by the patient.
       
At the hearing, Dr. Shupe testified that he had met personally with K.H.,
reviewed the CME prepared by Dr. Wagner, and conferred with K.H.'s aunt. Based
on his evaluation of K.H., Dr. Shupe diagnosed her as suffering from mood
disorder not otherwise specified and oppositional defiant disorder. Dr. Shupe
testified that K.H. was very emotional, easily upset, impulsive, unable to
follow redirection, and unable to make a rational decision regarding whether to
submit to treatment. He stated that K.H. told him that she had recently been
placed in a body net because "she had gone crazy." Based on her
impulsivity, mood swings, lability, actions, and the fact that she had recently
been placed in a body net, Dr. Shupe concluded that K.H. posed a serious risk of
harm to herself and "wouldn't be able to control herself safely outside the
hospital." In Dr. Shupe's opinion, for K.H., there were no less restrictive
alternatives than in-patient treatment.
       
In addition, Judy Stelzer, K.H.'s aunt, testified that K.H. had tried to harm
herself on at least two occasions. She testified that K.H. had attempted to
overdose on Tylenol, but was stopped before she had ingested enough of the
medication to cause serious problems. On another occasion, K.H. stated that she
was going to kill herself and then squirted Windex in her mouth and attempted to
squirt Hot Shot in her mouth. Stelzer stated that she phoned the Denton County
authorities on the night K.H. squirted Windex in her mouth. Then on July 1,
2002, Stelzer filed a sworn application for temporary mental health services on
K.H.'s behalf. Although Stelzer did not testify regarding the specific date that
K.H. attempted to ingest the Windex, the trial court could have concluded from
Stelzer's testimony that the acts occurred on or about July 1, 2002.
       
Based on the testimony of Dr. Shupe and Stelzer, we conclude that the trial
court could have reasonably found by clear and convincing evidence that K.H. had
committed a recent overt act and was likely to cause serious harm to herself. See
Mezick, 920 S.W.2d at 430-31 (holding testimony of a physician and sister
sufficient to establish clearly and convincingly the necessary statutory
criteria for temporary commitment). We overrule K.H.'s second issue.
       
Having overruled each of K.H.'s issues, we affirm the trial court's judgment.
 
   
                                                        JOHN
CAYCE
   
                                                        CHIEF
JUSTICE
 
PANEL A: CAYCE, C.J.; LIVINGSTON and
DAUPHINOT, JJ.
DELIVERED: June 19, 2003

1. See Tex. R. App. P. 47.4.
2. Dr. James Shupe, a licensed forensic psychiatrist, also
filed a CME. However, Dr. Shupe testified at trial.
3. The health and safety code dictates that in order for a
commitment hearing to be held, there must have been at least two CMEs for mental
illness filed with the court by physicians. Tex. Health & Safety Code Ann.
§ 574.009 (Vernon 2003). At least one of the physicians must be a psychiatrist.
Id. Here, each certificate was signed under oath by the attending
physician stating that he is licensed to practice medicine in the State and each
signature is followed by the designation "M.D." Further, Dr. Shupe
testified that he is board certified in general forensic psychiatry.
4. Section 54.618 governs appeals from a probate master's
report. Tex. Gov't Code Ann. § 54.618 (Vernon Supp. 2003).
5. Although K.H. contends that the State must show that
she committed the overt act within the thirty days preceding the temporary
commitment hearing, section 574.034 contains no such requirement. See
Tex. Health & Safety Code Ann. § 574.034. The State is only required to
show that the required medical examinations occurred within the preceding thirty
days. Id. § 574.009(a).