IN RE M.G.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-252-CV

IN THE INTEREST OF M.G. AND J.J.S.

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is a termination of parental rights appeal.  Following a bench trial on March 29-31, 2004, the trial court terminated the parental rights of Appellant Jaylene G. in her children M.G. and J.J.S.
(footnote: 2)  In two points, Appellant argues 1) the evidence is factually insufficient to support termination of her parental rights and 2) the trial court abused its discretion by permitting hearsay testimony from an expert witness.  We will affirm.

Background Facts

Appellant Jaylene G. is the mother of M.G. born May 15, 1988 and J.J.S. born January 1, 1992.  Steve A. is M.G.’s biological father and Doug S. is J.J.S.’s biological father.  Appellant was previously married to Jimmy G.

During the relevant time frame, Michelle Marter lived across the street from Appellant, and Maria Harris, who was friends with Marter, lived a few streets over from Appellant.  Harris was at Marter’s house the day TDPRS was notified about M.G.’s and J.J.S.’s abuse.  Harris testified that she saw Appellant come outside and start yelling at M.G. to come inside the house.  She then heard six to seven banging type noises.  Afterwards, Appellant left to go to work and M.G. walked over to Marter’s house.  Harris testified that when she asked M.G. about the banging noises, he told her that his mother had taken his head and banged it up against the counter.  Harris also testified that previous to that date she had seen M.G. with at least two black eyes.  M.G. contacted the Texas Department of Protective and Regulatory Services
(footnote: 3) (TDPRS) with Marter’s help, regarding the physical abuse of the children.  The following day TDPRS came to Marter’s house to investigate the call.  On October 25, 2002, TDPRS filed an emergency petition to have the children removed from Appellant’s home.  The court found that there was a continuing danger to the children’s physical health or safety and that leaving the children in Appellant’s home would be contrary to the children’s welfare.  Beginning on November 15, 2002, both M.G. and J.J.S. began living with a licensed foster parent.

TDPRS appointed Alicia Alexander-Bird as the therapist for M.G. and J.J.S.  During her initial sessions with each boy, she learned that the boys were abused on a “regular basis” starting around the age of four or five.  J.J.S. stated that his mother would hit him in the head or face and that when he would fall to the ground she would kick him in the ribs or stomach.  He also said that Appellant punched M.G. in the face and kicked him when he fell to the ground.

M.G. testified that he received “lots of beatings” when his mother would get “raged and furious and just start hitting and swinging.”  J.J.S. did not testify in open court, but did speak to the court privately in the judge’s chambers with only the judge and court reporter present.  While in the judge’s chambers, J.J.S. told the court that his mother “used to hit us and kick us, like over small things, like when we’d drink a Dr. Pepper and it was the last one” and that the hitting had taken place for years.  Also, in his videotaped interview with TDPRS, J.J.S. stated that Appellant would hit him and his brother in the face and slap them around.

Both boys related numerous specific instances when Appellant subjected one or both of them to physical or emotional abuse.  M.G. testified that when he was in the first grade, he had difficulty learning his alphabet.  He stated that Appellant woke him up in the middle of the night and screamed at him to say his ABCs.  He testified that afterwards she went into the living room and pretended to stab herself with a knife.  M.G. said he was scared and started to run out the front door to get help when Appellant stopped him, and told him she was not hurt.  During Appellant’s testimony, she denied waking M.G. up in the middle of the night and testified that the stabbing incident was a different time when she and the children were playing dead.

M.G. also recalled an incident when Appellant picked up J.J.S. by the neck causing him to choke.  Appellant denied that this ever happened.  M.G. testified that on another occasion Appellant had instructed him to remove his eyeglasses and then began to hit and kick him.  M.G. stated that he tried to pull his knees up to his chest to protect himself but that he still suffered a black eye.

About two weeks before TDPRS was contacted, M.G. testified that Appellant struck him in the face with her closed hand.  His eye was swollen  and a bruise had started to show on his face.  When M.G. went to see an eye doctor because of the injury, Appellant told M.G. to tell the doctor that the injury happened when he jumped on his brother in the swimming pool and hit his brother’s heel.  J.J.S. discussed this incident in his videotaped interview with TDPRS  and when he spoke with the trial judge.  He stated that Appellant told him and his brother to say that M.G.’s eye was injured when it made contact with J.J.S.’s heel in the swimming pool.  During Appellant’s testimony, she admitted to slapping M.G. on the cheek on this particular occasion but said that the eye injury happened later and that M.G. had lied during his testimony.  She also stated that she never told her children to lie about this incident.

M.G. testified that the incident that caused him to call TDPRS occurred because his mother was upset that one of his friends drank two of Appellant’s Dr. Peppers.  M.G. stated that Appellant yelled at him and started banging his head into a kitchen cabinet.  In her testimony Appellant claimed that she never touched M.G.  Instead, she said that she pointed a fork at him several times and that M.G. would jerk backwards, but that she had no knowledge of him hitting his head.

Both boys testified that Appellant had left them alone on several occasions and that they were scared to be home alone.  They also stated that they would sometimes call Appellant and ask her to come home but that she told them no.  Appellant testified that she only left her children home alone overnight one time and that it was when M.G. was fourteen-years-old and old enough to take care of J.J.S.

During Appellant’s testimony, she admitted that she allowed M.G. to stay with his biological father even though he had allegedly raped Appellant and even though he told Appellant that he had sodomized one of his children. Furthermore, Carena Lacy, one of M.G.’s teachers, testified that on one occasion he came to school with a black eye and told her that he got it when he dived into the swimming pool and hit his brother’s heel.  She also testified that M.G. came to school with another black eye about one month later.

Appellant called numerous witnesses who testified that she was a good, loving mother.  Appellant also points out that many of the witnesses testified that the children had problems with lying and stealing.  However, there was expert evidence that lying and stealing are learned behaviors.  Furthermore, evidence was presented that Appellant had the children steal food from the grocery store.  However, Appellant denies that she had the children steal food. 

On September 2, 2003, TDPRS filed a motion to set the termination hearing of the parent-child relationship between Appellant and M.G. and J.J.S.  Following a bench trial, the trial judge terminated Appellant’s parental rights.  On July 30, 2004, the trial court signed an order terminating the parental rights of Appellant in M.G. and J.J.S.  This appeal followed.

Hearsay

In her second point,
(footnote: 4) Appellant contends that the expert witness, Alicia Alexander-Bird, was allowed to improperly testify to the hearsay statements of M.G. and J.J.S.  A trial court’s rulings in admitting or excluding evidence are reviewable under an abuse of discretion standard.  
Nat’l Liab. & Fire Ins. Co. v. Allen
, 15 S.W.3d 525, 527-28 (Tex. 2000).  An appellate court must uphold the trial court’s evidentiary ruling if there is any legitimate basis in the record for the ruling.  
Owens-Corning Fiberglas Corp. v. Malone
, 972 S.W.2d 35, 43 (Tex. 1998).

Under the rules of evidence, expert testimony is permitted if it will assist the trier of fact to understand the evidence or to determine a fact in issue.  
Tex. R. Evid
. 702.  A two-part test governs the admissibility of expert testimony: (1) the expert must be qualified; and (2) the testimony must be relevant and be based on a reliable foundation.  
Helena Chem. Co. v. Wilkins
, 47 S.W.3d 486, 499 (Tex. 2001); 
E.I. du Pont de Nemours & Co. v. Robinson
, 923 S.W.2d 549, 556 (Tex. 1995).  In assessing the reliability of the expert’s testimony, the court must determine whether “there is simply too great an analytical gap between the data and the opinion proffered.”  
Gammill v. Jack Williams Chevrolet, Inc
., 972 S.W.2d 713, 727 (Tex. 1998) (quoting 
Gen. Elec. Co. v. Joiner
, 522 U.S. 136, 145-46 (1997)).

An expert may base his opinion upon facts perceived by, reviewed by, or made known to the expert at or before the hearing.  
Tex. R. Evid
. 703.  If the evidence is of a type reasonably relied upon by experts in the field in forming opinions, the facts or data need not be admissible in evidence.  
Id
.  An expert is allowed to rely on hearsay evidence in reaching her conclusions and may testify about the basis for her conclusions, subject to an objection that its probative value is outweighed by the risk of prejudicial harm.  
Sosa ex rel. Grant v. Koshy
, 961 S.W.2d 420, 426-27 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

In the present case, during the direct examination of Alexander-Bird, Appellant made eleven hearsay objections.  The trial court informed counsel, “This witness is allowed to rely upon what the child told her in forming her opinion, and that’s true even if it contains hearsay.  So if you want a running objection to what the child told her, I will grant you a running objection.”  Appellant told the trial court that she wanted a running objection and made no further objection regarding the testimony, except for one objection based on speculation.

Therefore, because Alexander-Bird’s testimony was based on sources reasonably relied upon by experts in her field, the trial court did not abuse its discretion by concluding that her testimony fell within rules 702 and 703.  
See
 
Tex. R. Evid
. 702, 703.  We overrule Appellant’s second point.

Factual Sufficiency

Burden of Proof in Termination Proceedings

A parent's rights to 
"
the companionship, care, custody, and management
"
 of his or her children are constitutional interests 
"
far more precious than any property right.
"  
Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982).  
"
While parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.
"  
In re C.H.
, 89 S.W.3d 17, 26 (Tex. 2002).

In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit.  
Tex. Fam. Code Ann
. § 161.206(b) (Vernon Supp. 2004-05);
 Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. 
 Holick
, 685 S.W.2d at 20-21; 
In re D.T.
, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh'g).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.  
Tex. Fam. Code Ann
. §§ 161.001, 161.206(a); 
In
 
re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
G.M
., 596 S.W.2d at 847; 
D.T
., 34 S.W.3d at 630.  It is defined as the 
"
measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.
"
  
Tex. Fam. Code Ann
. § 101.007 (Vernon 2002).

The higher burden of proof in termination cases alters the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002).  
"
[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.
"
 
 Id.
  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine 
"
whether the evidence is such that a factfinder could reasonably form a firm belief or conviction
" 
that the grounds for termination were proven.  
Id
.  Our inquiry here, is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that Appellant violated one of the conduct provisions of section 161.001(1) and that the termination of Appellant’s parental rights would be in the best interest of M.G. and J.J.S.  
See id
. at 28.

Trial Court’s Findings

The pertinent portions of the trial court’s findings of fact and conclusions of law are as follows:

[1] The Court finds that [M.G.] was a credible witness.

. . . . 

[2] The Court finds that [J.J.S.] was a credible reporter.

[3] The Court finds that Jaylene [G.] assaulted both of her children numerous times.

[4] The Court finds that Jaylene [G.] taught and encouraged her children to steal items from retail stores. 

[5] The Court finds that Jaylene [G.] left her children alone overnight on several occasions without appropriate supervision, causing serious emotional distress to each child and creating an unreasonable risk of physical harm.

. . . . 

[6] The Court finds that even though Jaylene [G.] participated in the services provided by the Department of Family and Protective Services, she did not benefit from those services and therefore allowing the children to return to her custody was likely to result in serous emotional or physical damage to the children.

. . . . 

[7] The Court finds that Alicia Byrd-Alexander
(footnote: 5) was a credible witness.

[8] The Court finds that Alicia Byrd-Alexander was the therapist for both children and that she corroborated the statements made by the children as to the way  they were treated by their mother.  She also rendered her professional opinion that the children had suffered physical and emotional damage as a result of their mother’s behavior, and that returning them to their mother would likely result in serious emotional or physical damage to them.

[9] The Court finds that Lori Christenson . . . was a credible witness.

. . . .

[10] The Court finds beyond a reasonable doubt that Jaylene [G.] knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children.

[11] The Court finds beyond a reasonable doubt that Jaylene [G.] engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children.

[12] The Court finds beyond a reasonable doubt that the continued custody of the children with Jaylene[G.] is likely to result in serious emotional or physical damage to the children.

[13] The Court finds that it is in the best interest of the children that the parental rights of Jaylene [G]. be terminated.

Texas Family Code Section 161.001(1)(E)

Under section 161.001(1)(E) of the Texas Family Code, Appellant’s parental rights could properly have been terminated if the trial court found by clear and convincing evidence that she "engaged in conduct or knowingly placed the [children] with persons who engaged in conduct which endangers the physical or emotional well-being of the child."  
Tex. Fam. Code Ann
. § 161.001(1)(E). Under this section, the term "endanger" means to expose to loss or injury or to jeopardize.  
In re M.C.
, 917 S.W.2d 268, 269 (Tex. 1996).  There must be evidence of endangerment to the child's physical or emotional well-being as the direct result of the parent's conduct.  
In re R.D.
, 955 S.W.2d 364, 367-68 (Tex. App.—San Antonio 1997, pet. denied).  Subsection (E) requires a "course of conduct."  
Id
.  Accordingly, when analyzing a trial court’s findings pursuant to subsection (E), we must determine whether sufficient evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act.  
In re D.M.
, 58 S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.).  Termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.  
Tex. Fam. Code Ann
. § 161.001(1)(E); 
D.T
., 34 S.W.3d at 634; 
In re K.M.M.
, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.).

The record recites a pattern of physical and emotional abuse by Appellant. In fact, our review of the record discloses ample evidence to support the trial court’s findings.  Both boys, along with numerous other witnesses, recounted several incidents of abuse.  Moreover, M.G.’s and J.J.S.’s testimony about particular instances of abuse were supported by other witnesses’ testimony.  For example, on the date TDPRS was called, M.G. testified that Appellant banged his head into the kitchen cabinets numerous times.  Although Harris did not actually see Appellant bang M.G.’s head into the cabinet, she testified that Appellant was screaming and yelling at M.G. and that she heard six to seven loud bangs when M.G. went inside his house.  She also testified that when M.G. came back out a few minutes later to take out the trash, he was staggering and his face was red and swollen.  Harris and Lacy testified that they saw M.G. with black eyes on more than one occasion.  Additionally, there was testimony from the children, along with Appellant, that she had left them alone overnight.  Finally, Alexander-Bird testified that Appellant continues to deny abusing her children.  Appellant refuses to admit that her actions endanger the well-being of her children.

The evidence in this case permitted the trial court to reasonably form a firm belief or conviction that the grounds for termination under section 161.001(1)(E) were proven by clear and convincing evidence.  We hold that the record adequately supports the trial court’s findings.

In the present case, the court found that Appellant had endangered the physical and emotional well-being of her children under subsections 161.001(1)(D) and 161.001(1)(E).  If multiple conduct grounds are alleged for termination, the evidence is factually sufficient if it supports just one of the alleged conduct grounds.  
In re W.J.H.
, 111 S.W.3d 707, 715 (Tex. App.—Fort Worth 2003, pet. denied).  Therefore, we are not required to address whether the evidence is sufficient to establish termination under section 161.001(1)(D).

Best Interests

Additionally, Appellant argues that termination of her parental rights would not be in the best interest of M.G. and J.J.S.  In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Tex. Fam. Code Ann
. § 161.001; 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S. W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  
Tex. Dep't of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).  Our inquiry here is limited to whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of Appellant’s parental rights would be in the best interest of the children.  
In re C.H.
, 89 S.W.3d 17, 28 (Tex. 2002).

Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child, 

(2) the emotional and physical needs of the child now and in the future, 

(3) the emotional and physical danger to the child now and in the future, 

(4) the parental abilities of the individuals seeking custody,

(5) the programs available to assist these individuals to promote the best interest of the child,

(6) the plans for the child by these individuals or by the agency seeking custody, 

(7) the stability of the home or proposed placement, 

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and 

(9) any excuse for the acts or omissions of the parent. 

Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  
C. H
., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  
Id
.  On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.  
Id
.

A review of the record in this case supports the trial court’s findings that termination of Appellant’s parental rights was in the best interest of M.G. and J.J.S.  For example, three witnesses testified that living with Appellant would place the children in danger of emotional and physical damage.  Moreover, M.G. testified that since he began living with his foster parent, he was no longer physically abused.  Dr. McCreary, the psychologist who evaluated Appellant, recommended joint counseling “if” the children were returned, but did not recommend the family be reunited as asserted by Appellant’s brief.  McCreary also stated that Appellant had “ a lot of negative things to say about her son.”  The record shows that Appellant consistently denied abusing her children, but instead minimized the significance of any of the incidents the children testified about.  Alexander-Bird testified that without Appellant admitting that her actions endangered her children emotionally and physically, Appellant could not be helped by any classes or counseling.  The evidence supports the trial court’s finding that termination of Appellant’s parental rights would be in the best interests of the children.  Accordingly, we overrule Appellant’s first point.

Conclusion

Having overruled Appellant’s two points on appeal, we affirm the trial court’s judgment.

PER CURIAM

PANEL A:   HOLMAN, J., CAYCE, C.J., and SAM J. DAY, J. (Retired, Sitting by Assignment).

DELIVERED:  April 28, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
To protect the parties involved in this appeal, we identify the children by initials only and the Appellant by first name and last initial.  
See
 
Tex. Fam. Code Ann. 
§ 109.002(d) (Vernon 2002).

3:
The name of the agency has changed to the Texas Department of Family and Protective Services effective September 1, 2003.  
See
 Act of June 2, 2003, 78th Leg., R.S., ch. 198, §§ 1.01(b)(4)(J), 1.27, 2003 Tex. Gen. Laws 611, 641, 729.  However, because the pleadings and judgment in the trial court refer to the Texas Department of Protective and Regulatory Services, for the sake of consistency will do likewise in this opinion.

4:
In part of her second point, Appellant references the bias of the trial court.  Appellant 
cites no authority in support thereof.  Therefore, Appellant has waived this portion of her issue, and we will not address it.  
See 
Tex. R. App. P.
 38.1(h); 
Shelton v. Sargent
, 144 S.W.3d 113, 119 (Tex. App.—Fort Worth 2004, pet. denied) (holding point may be waived because of inadequate briefing).
  

5:
We note that the reporter’s record lists the witness’s name as Alicia Alexander-Bird, while the trial court’s findings of facts lists her name as Alicia Byrd-Alexander.